# OGDEN VALLEY TROUT AND RESORT COMPANY v. LEWIS.

No. 2324.   Decided June 10, 1912 (125 Pac. 687.)

1. APPEAL AND ERROR—ASSIGNMENT OF ERRORS—AMENDMENT. Assignments of error not included in the original assignments filed and served under Supreme Court rule 26, 29 Utah, XIII (97 Pac. x), but made a part of the original assignment by an amendment in the regular way and in due time by permission of a justice of the Supreme Court, will be considered where respondent does not claim that he did not have ample time to meet them in his brief and argument.   (Page 189.)

2. JURY—WAIVER OF RIGHT—OPERATION AND EFFECT. Const., art. 1, sec. 10, providing that a jury in a civil case is waived unless demanded, does not prevent the court from calling a jury on its own motion, although both parties waive a jury trial.[1] (Page 189.)

3. TRIAL—RIGHT TO OPEN AND CLOSE. In an action on a note where the defendant by his answer and by an admission in open court conceded the execution and delivery of the note and its nonpayment, but defended on the ground of false representations, he was properly permitted to open and close.   (Page 190.)

4. CORPORATIONS—SALE OF STOCK—FALSE REPRESENTATIONS—RESCISSION. Representations by a seller of corporate stock that the corporation's business affairs were on a paying basis, that the stock offered for sale was treasury stock and not a personal stock of the seller, and that a prominent business man and his business associates were heavily interested in the corporation, and representations as to the value of the property owned by the corporation, were material, and, if false and relied on by the buyer, entitled him to rescind.   (Page 191.)

---

[1] Whipple v. Preece, 24 Utah, 376, 67 Pac. 1072; Wood v. Railroad, 28 Utah, 371, 79 Pac. 182.

5. APPEAL AND ERROR—PREJUDICIAL ERROR—EXCLUSION OF EVIDENCE. In an action involving the falsity of a representation by a seller of corporate stock that a prominent business man and his business asociates were interested in the corporation, the exclusion of cross-examination of the buyer as to whether he knew who these business associates were was not prejudicial to the seller. (Page 192.)

6. CORPORATIONS—SALE OF STOCK—FRAUD—EVIDENCE. In an action involving the falsity of representations by a seller of corporate stock as to the value of the corporation's property, evidence of its actual value, not offered for the purpose of showing the value of the stock, but to show the falsity of the representations, was properly admitted. (Page 192.)

7. WITNESSES—CONTRADICTION—COMPETENCY. Where a witness testified to alleged statements of a party to an action, the exclusion of the testimony of another witness that such statements were not made was proper where such witness did not show to the satisfaction of the trial court that he was referring to the same conversation with the party. (Page 193.)

8. APPEAL AND ERROR—REVIEW—HARMLESS ERROR. The exclusion of testimony which could not have affected the result arrived at by the jury was not prejudicial error. (Page 194.)

9. EVIDENCE—RELEVANCY—SIMILAR TRANSACTIONS. A party seeking to recover for false representations cannot prove the making of such representations by other similar representations in his absence made by the same person. (Page 195.)

10. EVIDENCE—RELEVANCY—SIMILAR TRANSACTIONS. False representations, similar to the ones involved in an action, are admissible where the intent, motive, or knowledge of their falsity by the party making them are material, or where it is sought to prove a system or general plan or scheme to defraud. (Page 195.)

11. EVIDENCE—RELEVANCY—SIMILAR TRANSACTIONS. Where an action involving the right of a party to rescind a contract for false representations was tried on the theory that it was necessary to prove that the party making the representations knew that they were false, and the court so charged, evidence of similar false representations by him was admissible to show that they were made with intent to deceive and with knowledge of their falsity. (Page 197.)

12. CONTRACTS—RESCISSION—GROUNDS. A party seeking the rescission of a contract for false representations need not prove that the party making the representations knew they were false.[2] (Page 198.)

---

[2] Smith v. Columbus Buggy Co. et al., 40 Utah, 580, 123 Pac. 580.

APPEAL from District Court, Second District; *Hon. N. J. Harris,* Judge.

Action by Ogden Valley Trout and Resort Company against T. J. Lewis.

Judgment for defendant. Plaintiff appeals.

AFFIRMED.

*Skeen Brothers* and *Wilkins* for appellant.

*Snyder & Snyder* and *P. H. Neeley* for respondent.

APPELLANT'S POINTS.

Proof of fraud in a transaction with one person is not even presumptive proof of fraud in another and different transaction with another person, and is inadmissible. (*Simpkins v. Bergren,* 2 Ill. App. 101; *McKay v. Russell,* 3 Wash. 378, 28 Pac. 908, 28 Am. St. Rep. 44; *Somes v. Skinner,* 16 Mass. 348; *Levy v. Lee,* 13 Tex. Civ. App. 510, 36 S. W. 309; *Knotwell v. Blanchard,* 41 Conn. 614; *Edwards v. Warner,* 35 Conn. 517; *Clark County v. Rice,* 106 N. W. 231; *Hunt v. Van Burg,* 106 N. W. 329; Kingsbury v. Bank, 30 Tex. Civ. App. 387, 70 S. W. 551; *Redding v. Estate,* 38 Atl. 230.) In cases of conspiracy where such evidence has been admitted, it is uniformly held that it must first be shown that the statements made to the witnesses were false and fraudulent, and that the witness was deceived. (6 Ency. of Evidence, 38; *Insurance Company v. Wright,* 33 Ohio St. 533.)

A party seeking to excuse himself, when asking relief on the ground of fraud, must show that his ignorance was not negligent; that he remained ignorant without any fault of his own; that he could not by reasonable diligence have discovered the fraud, and that where the means of knowledge are open to him he is chargeable with knowledge from the date

when he could have ascertained the facts. (*Foster v. Mansfield,* 36 Fed. 638; *Hardt v. Heidweyer,* 152 U. S. 545, 38 L. Ed. 548; Pomeroy Eq. Jur., sec. 27 and 917; *Felix v. Patrick,* 145 U. S. 317, 36 L. Ed. 719; *Foster v. M. C. & L. M. Co.,* 146 U. S. 88, 36 L. Ed. 899.)

Evidence of the value of a corporation's realty is only received to show value of its stock in the absence of better evidence. (*State v. Sattley,* 33 S. W. 41; *Moffat v. Hanford,* [Mo.], 34 S. W. 252; *Con. Divide Mining Inv. Co. v. Bliley* [Colo.], 46 Pac. 633; *Moghaman v. Prentiss* [Colo.], 51 Pac. 94; *Fritz v. Vyman,* 55 Cal. 469; 2 Cook on Corporations, sec. 580.)

### RESPONDENT'S POINTS.

Fraud being alleged, a wide range is given in proof of circumstances tending to establish it, it being a matter of secrecy generally. It is only by collecting together numerous circumstances oftentimes that it can be brought to the light and exposed. (*Hall v. Stanton* [Pa.], 2 Weekly Notes 578; *Brown v. Shock,* 77 Pa. St. 471; *Brinks v. Heise,* 84 Id. 246; *Battles v. Laudenslager,* 84 Id. 446. Upon this point, see especially our own decisions: (*Leedom v. Furn. Co.,* 12 Utah, 172; Ogden State Bank v. Barker, 12 Id. 13; Cahoon v. West, 20 Id. 73.) Where fraud in the purchase or sale of property is in issue, evidence of other frauds of like character committed by the same parties, at or near the same time, is admissible. Its admissibility is placed on the ground that where transactions of a similar character, executed by the same parties, are closely connected in time, the inference is reasonable that they proceed from the same motive. The principle is asserted in *Cary v. Hotailing,* 1 Hill, 311, and is sustained by numerous authorities. The case of fraud, as there stated, is among the few exceptions to the general rule that other offenses of the accused are not relevant to establish the main charge. (*Hall v. Naylor,* 18 N. Y. 588; *Castle v. Bullard,* 23 Howard, 172; *Comp. R. v. Holt, Bell C.* C. 280; [Eng. 1858-61]; *Hovey v. Grant,* 52 N. H. 569.)

In actions for fraud, much latitude is always given to the

admissibility of evidence.  If a motive existed permitting of a particular line of conduct, and it be shown that in pursuing that line, a defendant has deceived and defrauded one person, it may justly be inferred that similar conduct toward another at about the same time, and in relation to a like subject, was meditated by the same spirit.  (*Butler v. Watkins,* 13 Wall. 456; Gillette Ind. & Col. Ev., p. 117.)

FRICK, C. J.

Appellant brought this action to recover upon a promissory note given for the sum of $2,000, which, it is alleged, was made and delivered by respondent to one Joseph Barker who assigned it to appellant.  The respondent admitted the execution and delivery of the note to Barker, and, as affirmative defense, averred that respondent was induced to execute and deliver the same to Barker by means of false and fraudulent representations.  In this regard it is in substance averred that Barker did falsely and fraudulently represent to respondent that the appellant had authorized the sale of its treasury stock, amounting to the sum of $150,000, to be sold at par; that he was the duly authorized agent of appellant to obtain subscribers therefor; that the proceeds derived from the sale of said stock would all go into the treasury of appellant, and would be devoted to enlarging its facilities for producing marketable fish, and to create a pleasure resort to be used by all who pay an entrance fee; that David Eccles, a prominent business man of Ogden, Utah, was "behind the company (appellant) and was heavily interested therein, as were also several of his business associates in other enterprises, all of whom were strong financially and prominent business men, and that they would use their efforts and business experience to make the company a successful business concern, and that said business of said corporation was then upon a paying basis;" that treasury stock of appellant had been sold to several other persons in the town or neighborhood where respondent resided; that respondent, at the time the representations were made, was well acquainted with said David Eccles and knew him to be a man of high standing in the

business world; and that his reputation was such that respondent believed that he would not be connected with an enterprise which he did not believe to be meritorious, and respondent further believed that, owing to said Eccles' financial standing, he was able to place and maintain any meritorious business enterprise upon a paying basis.

Respondent further alleged that, believing and relying upon the foregoing and other statements and representations made by said Barker, he subscribed for 200 shares of said alleged treasury stock of the par value of ten dollars each, which amounted to the sum of $2,000, for which he made and delivered to said Barker the note in suit; that respondent would not have subscribed for said stock or any part thereof had he not been induced to do so by the statements and representations aforesaid; and that said representations were false and untrue, and said Barker, at the time he made them, knew them to be false and untrue. Respondent also averred that the stock subscribed for by him was not treasury stock, and that the money to be derived therefrom was not intended to be paid into the treasury of appellant, but that said stock was owned by said Barker, and that the money derived therefrom he intended to retain and did retain for his own use. Respondent also alleged that, when appellant was incorporated, it issued stock of the par value of $140,000 to the incorporators, which stock was pretended to have been paid in full by the transfer of certain property from certain incorporators to appellant, which property was not worth $140,000 nor any other sum in excess of $25,000, and that all stock issued for said property in excess of said last sum was without consideration and void; that said Barker was at all times an officer and director of appellant; and that, before this action was brought, he had commenced an action in his own name to recover on the note in suit, which action was dismissed before this action was commenced. Respondent also alleged that he tendered back the stock, and, the same being refused by both appellant and Barker, he left it at the bank where the note in suit was left for collection.

Upon substantially the foregoing issues a trial to a jury resulted in a verdict in favor of respondent. The court entered judgment on the verdict, and appellant has appealed from said judgment, and, for the reasons hereinafter stated, asks that the same be reversed. We shall state such facts as are deemed material in connection with the several assignments hereafter passed on.

Before proceeding to a consideration of the assignments of error, it becomes necessary for us to pass upon an objection interposed by respondent, namely, that there are a number of assignments that cannot be considered by us because they were not included in the original assignments of error filed and served under rule 26 (29 Utah xiii, 97 Pac. x) of this court. The record shows that some of the errors now urged were not included in the original assignments of error, but all of such newly-assigned errors were made a part of the original assignment by filing an amendment thereto in the regular way and in due time by permission of one of the justices of this court. The additional assignments were therefore made a part of the record, and in view that respondent does not claim that he is prejudiced in any way by the additional assignments, or that he has not had ample time and opportunity to meet them in his brief and argument, his objection cannot prevail.

Proceeding now to a consideration of appellant's assignments, the first one to be noticed is that the court erred in submitting the case to a jury. It appears from the record that both parties expressly waived a jury and asked the court to try and determine the case. The court declined to do so, and, on his own motion, directed that a jury be impaneled, which was done, and the case was submitted to them in the usual way. This court has twice held that such a course is permissible. (*Whipple v. Preece,* 24 Utah, 376, 67 Pac. 1072; *Wood v. Railroad,* 28 Utah, 371, 79 Pac. 182.) Appellant's counsel, however, insist that in those two decisions this court overlooked section 10 of article I of the Constitution of this state, which, so far as material here reads: "A jury in a civil case will be waived unless de-

manded." This provision, however, does not prevent the trial court from calling a jury on his own motion to try a case. We think that the whole force and effect of the constitutional provision just referred to amounts to this: That, by not demanding a jury, either party to a civil action loses the right to demand a trial by jury because that right is effectively waived by a failure to demand. It was not intended by that provision to prevent the court from calling a jury to try a case, and, in case this is done, that the legal effect will be different than if a jury had been demanded by either of the parties. Where both parties, as in this case, request the court to hear the evidence and try the case without a jury, the court should do so, but we cannot see how the mere fact of calling a jury by the court to try the case can constitute reversible error.

It is also contended that the court erred in permitting the respondent to open and close the argument to the jury. After the jury had been impaneled, respondent's counsel, in addition to the admissions contained in the answer, made and had entered of record the formal admission that respondent had executed and delivered the note in suit, and that no part thereof had been paid, and, upon such admission, demanded the right to open and close the case to the jury. Appellant's counsel resisted the right of respondent to do so, and the court did not then rule on the question. Appellant's counsel then proceeded to and did offer the note in evidence, and after doing so rested. Respondent's counsel thereupon again demanded the right to open and close for the reason that it was then made apparent by reason of respondent's admissions that appellant was not required to prove anything to entitle it to a judgment, and that, by merely introducing the note in evidence, it had proved nothing except what had been admitted by respondent. In other words, appellant would have been entitled to a judgment upon respondent's admissions, and thus the burden, not only of going forward, but the burden of proof, was cast on respondent. While appellant cites some authorities, yet, all that are cited by it are to the effect that, under the circumstances disclosed by the record, the right to open and close was with

respondent. There is therefore no escape from the conclusion that, in permitting the respondent to open and close, the court did no more than to follow the law.

It is also insisted that the court erred in refusing appellant's request to direct the jury to return a verdict for it upon the ground that the alleged misrepresentations had not been established by the evidence. Without taking time and space to set forth the evidence in detail, we feel constrained to say that, from a careful examination of the evidence contained in the bill of exceptions, it is made to appear that the respondent produced evidence which tended to prove, and from which the jury were authorized to find: (1) That appellant's business affairs were not on a paying basis when the stock was offered for sale, nor at any time, which was directly contrary to Barker's representations; (2) that the stock for which the note in suit was given was not treasury stock as stated by Mr. Barker, but was his own stock; (3) that David Eccles was not "behind the company," and was not "heavily interested therein," as represented by Mr. Barker, but, on the contrary, he had no interest in the corporation whatever, and had no connection therewith, and, when requested by Mr. Barker and another to take stock, had peremptorily refused to do so some time before Mr. Barker made the foregoing representation; (4) that the alleged business associates of Mr. Eccles were not largely interested in the appellant corporation as represented by Mr. Barker, but, as disclosed from the articles of incorporation, each had only one share of stock therein; (5) that the property owned by the company was not worth what Mr. Barker represented it was, and as disclosed from the the prospectus of the company, which Mr. Barker represented to be correct, but was worth only about one-sixth of the amount represented; and (6) that respondent believed and relied on the foregoing representations and statements, and would not have subscribed for the stock, nor executed the note in suit, had they not been made and relied on as aforesaid. We think that, under all the authorities, the foregoing representations were what in law are termed material, and, if false and relied on and thus had in-

duced the respondent to subscribe for the stock and to execute the note, he, upon learning the truth, had the right to rescind the contract of subscription, and, upon returning or tendering back the stock, demand that the note given for the stock be canceled.

The foregoing doctrine is clearly sustained by the following authorities, namely: 1 Cook on Corporations (5th Ed.), sec. 143; 2 Clark & Marshall on Private Corporations, sec. 471; *Coles v. Kennedy,* 81 Iowa, 360, 46 N. W. 1088, 25 Am. St. Rep. 503; *Talmadge v. Sanitary Sec. Co.,* 31 App. Div. 498, 52 N. Y. Supp. 139; and *West End Real Estate Co. v. Nash,* 51 W. Va., 341, 41 S. E. 183.

In view, therefore, of the foregoing authorities, the court was right in refusing to direct a verdict for the appellant.

Appellant also asserts that the court erred in not permitting its counsel to cross-examine respondent with regard to his knowledge of who were some of the business associates of Mr. David Eccles. Assuming that the cross-examination desired would have been proper, yet appellant was in no way prejudiced by the ruling of the court in refusing to permit it. The question to be established was that Mr. Eccles and his business associates referred to by Mr. Barker were stockholders, and were thus interested in and were "behind" the business affairs of appellant as represented by him, and not that respondent knew some of the business associates of Mr. Eccles and that some of them were interested in the company. The latter is all that appellant's counsel could have established, if respondent had answered all of the questions propounded to him as counsel desired them to be answered. This assignment, therefore, cannot prevail.

It is also assigned that the court erred in admitting evidence of the actual value of the real estate and other property owned by appellant. It is urged that the value of the capital stock of a corporation cannot ordinarily be proved in that way. The evidence was not offered nor admitted for the purpose of proving the value of the stock, but it was offered and admitted to show that the presentations that it was alleged Mr. Barker had made with regard to

the value of property owned by the appellant were not true. There was no other way to show that these particular representations were untrue, and, in our opinion, the court's ruling was right.

It is further contended that the court erred in excluding the testimony of a certain witness produced by appellant in rebuttal. Respondent had proved by a certain witness that such witness had heard Mr. Barker make certain representations respecting who were stockholders of and interested in the appellant company. Appellant's counsel produced the witness referred to for the purpose of contradicting the statement made by respondent's witness. The court, however, seemed to be of the opinion that appellant's evidence had left in doubt the identity of the conversation at which the alleged statements were made to which respondent's witness had testified, and for that reason the court excluded the testimony of the witness. Assuming, without deciding, that it was proper to permit appellant to contradict the statements made by respondent's witness, without first asking him whether or not the statements testified to by him were made at a time and place when and where appellant's witness was present, yet, in view that appellant failed to identify the conversation to the satisfaction of the judge, he cannot be charged with error unless he erred in holding that the cross-examination was not properly identified. It goes without saying that, if the conversation testified to by respondent's witness was not the one appellant's witness had in mind at which the statements were made that he sought to contradict, then the offered testimony was not rebuttal, and, if it was not, then the ruling was correct. We have carefully read that opinion of the bill of exceptions relating to the question now under consideration, and we are not prepared to say that the trial judge erred in excluding the testimony for the reasons stated.

Another assignment relates to the exclusion of certain testimony which appellant's counsel sought to elicit from Mr. Barker. There are a number of questions that were pro-

pounded to the witness to which respondent's objections were sustained. There was considerable documentary evidence introduced at the trial, much of which, for reasons not disclosed, was not incorporated in the bill of exceptions and thus not certified to this court. Just what effect, if any, the excluded evidence may have had upon the ruling of the court we are unable to say. Some testimony, which was offered and excluded as aforesaid, directly contradicted the statements contained in the articles of incorporation upon a matter where such testimony was not proper. Some was clearly hearsay, while others of the statements offered were not relevant to any issue in the case. While it is true that it would perhaps have been proper enough to have permitted the witness to answer a few of the questions propounded to him, yet all of the answers to such questions, even if answered as counsel desired them to be, could not have had the slightest effect upon the result arrived at by the jury. Any error that may have been committed in this regard could not have prejudiced the appellant, and, for that reason if no other, this assignment cannot be sustained.

Appellant also complains that the court erred in its charge to the jury and in refusing a certain request to charge offered by its counsel. We have carefully examined the whole charge given by the court, as well as the particular instruction that is excepted to, together with the request which was refused. Keeping in view the evidence and the whole charge as given by the court, we are clearly of the opinion that the appellant has no cause for complaint. It is also clear that the particular proposition contained in the request was sufficiently covered in the court's general charge. Upon the other hand, the particular proposition of law to which appellant excepted, which, under certain circumstances, might have been improper, yet, in view of all of the evidence in this case, we think it was a correct statement of the law.

This brings us to the last and only assignment which, in our judgment, is not free from difficulty. At the trial respondent, over appellant's objection, was permitted to show that, at about the time that the representations testified to by

respondent were made to him, by Mr. Barker in order to induce some of respondent's townsmen or neighbors to subscribe for some of the alleged treasury stock, he made the same or similar representations to them. The record discloses that respondent produced a witness by whom he sought to show that Mr. Barker had induced such witness to subscribe for some of the alleged treasury stock by making similar representations to the witness that he about the same time made to respondent to induce him to subscribe for the stock in question. When this testimony was offered, appellant's counsel objected thereto as follows: "It is objected to on the ground that it is irrelevant and immaterial—an evident attempt to try another lawsuit within this lawsuit." Counsel for respondent, in stating the purpose for which the testimony was offered, said: "The purpose is to show a general plan as reflecting upon the motives of Mr. Barker at the time." The proposition, it seems, was argued to the court at length, and it admitted the evidence for the purpose suggested by respondent's counsel, and in their brief they now contend that it was relevant upon the question of knowledge, motive, and a general plan on the part of Mr. Barker to sell his individual stock by representing that it was company stock, and thereby showing his purpose to defraud.

There is no doubt that the weight of authority is that similar independent statements or representations made to others, in the absence of the person to whim those in controversy were made, and of which such person had no knowledge at the time he acted, and hence could not have influenced him to act, are not admissible as evidence from which it may be inferred that the representations in issue were in fact made. In other words, the mere fact that a person has made certain statements on one day to a particular person is not evidence from which it may be inferred that he in fact made the same or similar statements to another person at another time and place.

Statements or representations made to others are, however, relevant where the intent, motive, or knowledge of the falsity of the representations of the party making

them are material, or to prove a system or general plan or scheme to defraud.

In 6 Ency. Ev. p. 33, the doctrine followed by the courts upon this subject is fairly reflected in the following statement:

"Where the fraudulent intent of a party in the performance of an act is in issue, proof of other similar fraudulent acts is relevant and admissible to establish his intent or motive in the performance of the act in question, when it appears that there is such a connection between such other acts and the act in question as to authorize the inference that both are parts of one scheme or plan, in which the same motive is operative, and it is immaterial whether such other fraudulent acts occurred before or after the act in question, as remoteness in point of time affects only their weight. Evidence of such other fraudulent acts is usually offered upon the issue of motive or intent, and some of the decisions limit its competency to the proof of these issues. Such evidence, however, has been held competent to establish the party's knowledge of the falsity of his representations, to prove a system of fraud or a fraudulent conspiracy, and to identify the person charged as the fraudulent actor. By the great weight of authority, such evidence is not admissible to prove the fact of the making or utterance of the particular representations in suit, although some of the decisions hold it competent as affording a ground of presumption to prove the main charge."

The cases of *Johnson v. Gulick*, 46 Neb. 817, 65 N. W. 883, 50 Am. St. Rep. 629, *J. H. Clark & Co. v. Rice*, 127 Wis. 451, 106 N. W. 231, 7 Ann. Cas. 505, and *Levy v. Lee*, 13 Tex. Civ. App. 510, 36 S. W. 309, are fair examples of that class of cases in which it is held that other similar but independent representations are not admissible as evidence from which the uttering of the representations in issue may be inferred, and that they are not admissible for the purpose of proving knowledge of the falsity of the representations, because such knowledge on the part of the one who falsely makes material representations, which are relied on by another to his detriment, is not material, at least not in actions for rescission. Upon the other hand, it is held by the Supreme Court of California in *Kelley v. Owens*, 30 Pac. 596, by the Supreme Court of Iowa in *Zimmerman v. Brannon*, 103 Iowa, 144, 72 N. W. 439, and by the United States Cir-

cuit Court of Appeals in *Mudsill Min. Co. v. Watrous*, 61 Fed. 163, 9 C. C. A. 415, that, in case false representations are previously made to others as an inducement to sell the property concerning which the representations in issue are alleged to have been made, such former representations may be shown as evidence that the person who made the latter had knowledge of their falsity.

In *Jordan v. Osgood*, 109 Mass. 457, 12 Am. Rep. 731, after reviewing the authorities upon the question, the court says:

"We think the true rule to be deduced from them (the authorities) is that another act of fraud is admissible only where there is evidence that the two are parts of one scheme or plan of fraud committed in pursuance of a common purpose."

The case of *Oudin v. Crossman*, 15 Wash. 519, 46 Pac. 1047, is one in which the Supreme Court of Washington applies the rule applicable to the scheme or general plan to defraud where a sale of a mine was in issue. In that case it was alleged that false representations were made to a number of prospective purchasers respecting the value and condition of the mine. The admission in evidence of the statements and representations that were made to such prospective purchasers was upheld by the court, although the person to whom subsequent similar statements were made concerning the mine, and who in relying on the latter purchased the same without knowing of the former statements. The statements were admitted for the purpose of showing a general plan or scheme to defraud.

When all the evidence in this case is considered, including the inferences that the jury were authorized to deduce from certain facts, we cannot say that there is not some substantial evidence from which the jury were justified in finding that there was a scheme or general plan to defraud on the part of Mr. Barker. But, even though it be assumed that there is no evidence to support a finding of such a scheme or plan, or that this case in no event is one that can be brought within the class where a scheme or

plan to defraud may be shown, yet there is still another reason why the court did not commit prejudicial error against appellant in admitting the evidence objected to for the following reasons: Appellant's counsel tried and submitted the case to the jury upon the theory that, although the representations alleged to have been made by Mr. Barker and relied on by respondent were material and false, yet, if respondent had not established by a preponderance of the evidence that Mr. Barker made them with the intent to deceive, and with full knowledge of their falsity, respondent had not established his defense. Among the material elements which the court, at the request of appellant's counsel, charged the jury respondent must establish by a preponderance of the evidence before he could recover are the following: "(3) That said misrepresentations were knowingly and willfully made with intent on the part of the said Joseph Barker to induce the said defendant to enter into the contract and execute the note. (4) That said Joseph Barker must have known that the statements made to defendant were false, or must have represented them as true without a knowledge of their truth or falsity."

The authorities cited by appellant's counsel on which they rely all hold that false representations made to others, not in the presence and hearing of the one who claims to have been deceived thereby, are not admissible (1) because such representations, being unknown to him, could not have deceived nor induced him to act; (2) because they are not evidence of the fact that the representations in question were actually made; and (3) because whether the party who makes them either knows or does not know that they are false is immaterial to the right of rescission if in fact the representations were material, false, and induced the act sought to be rescinded. The foregoing conclusions seem both reasonable and logical. In what way does it affect the party who is deceived or misled and thereby induced to enter into a contract or to assume an obligation by representations that in fact are untrue, whether he who makes them knew them to be so or not? If the action were based on de-

ceit or were for damages which it is alleged were suffered by the plaintiff by reason of the false and fraudulent representations, then the plaintiff, in addition to proving the materiality and falsity of the representations and that he relied on them and was deceived and thereby induced to enter into the contract would have to go a step farther and prove that the defendant knew, when the representations were made, that they were false or that they were made recklessly and without any effort to learn of their truthfulness. In an action for a rescission, where the only consequence sought to be reached by the action is to rescind and to place the parties *in statu quo*, a different rule prevails. Why should he who makes false representations be permitted to profit by them, whether he knew they were false or not? Upon the other hand, why should the party who is deceived be bound by a contract based upon false representations simply because he cannot prove that the other party to the contract knew the statements when made were false? We have recently passed upon this identical question in the case of *Smith v. Columbus Buggy Co. et al.*, 40 Utah, 580, 123 Pac. 580, and we there held that, in case of rescission, it is not necessary to prove that the party who made the false representations knew them to be false when he uttered them, if such representations were in fact material and false and induced the other party to enter into a contract that he would not have entered into otherwise.

The case at bar was submitted to the jury upon the theory that it was a material matter that Mr. Barker, at the time he made them, knew that the statements and representations alleged to have been made by him to respondent were false, and that, before respondent could recover, he was required to establish, by a preponderance of the evidence, that Barker knew their falsity. This theory, having been stated in the instruction referred to, therefore became the law of the case and must control whether right or wrong. Knowledge on the part of Mr. Barker that the statements and representations that it was alleged he made was therefore made a material issue. This being so, respondent could legally avail himself of any evidence that was relevant to that issue. Nearly all, if not

quite all, authorities hold that, where knowledge is a material ingredient, similar acts or statements made by the party whose statements are in issue, and from which his knowledge of their falsity may be inferred, is relevant, although the evidence would not be admissible on other grounds. In view of the charge to which we have referred, which was given at the request of appellant's counsel, we are of the opinion that it cannot complain of the ruling of the court admitting the evidence to which reference has been made, although, under different circumstances, such evidence might not have been admissible. By referring to the cases cited by counsel for appellant, some of which we have referred to in this opinion, it will be seen that the trial courts in each case charged the jury that whether the party who made the representations knew they were false or not was not a material element in the case, and the appellate courts approved such charge. It is for this reason that those courts held that the evidence of other similar statements, not made in the presence of the party who claims to have been misled by subsequent statements, were irrelevant and should have been excluded. From what has been said, the case at bar does not come within the doctrine announced in those cases.

The judgment therefore should be affirmed. Such is the order. Respondent to recover costs.

McCARTY, J., concurs. STRAUP, J., concurs in the result.