## SMITH v. GILBERT.

No. 3008.   Decided April 26, 1917.   (164 Pac. 1026.)

1. EVIDENCE—RELEVANCY—SIMILAR MISREPRESENTATIONS. False
representations, similar to those in issue, are admissible, where
intent, motive, or knowledge of their falsity by the party making
them is material, or to prove a general scheme to defraud.[1]
(Page 514.)

2. APPEAL AND ERROR—HARMLESS ERROR—ADMISSION OF EVIDENCE—
CURE BY VERDICT. Where appellant prevailed in his claim, error
in admission or exclusion of evidence relating thereto was
harmless.   (Page 515.)

3. EVIDENCE—RELEVANCY—SIMILAR MISREPRESENTATIONS. In action
on notes claimed to have been secured by misrepresentation,
testimony of others, to whom plaintiff made similar statements,
that they relied thereon was inadmissible, although such rep-
resentations to others might be admissible; the issue here being
whether defendant relied on plaintiff's misrepresentations and
the statements of others that they relied on similar misrepre-
sentations not tending to establish a general scheme to defraud.
(Page 516.)

4. CORPORATIONS—SALE OF STOCK—FRAUD—GENERAL SCHEME TO
DEFRAUD. A general scheme to defraud cannot be inferred
merely because a vendor is charged with making certain false
representations concerning stock offered for sale.   (Page 516.)

5. PLEADING—ISSUES AND PROOF—ADMISSION BY PLEADING. Where
a fraudulent sale of stock was claimed, evidence that it was
not treasury stock and was not nonassessable as represented was

[1]*Trout & Resort Co.* v. *Lewis*, 41 Utah 183, 125 Pac. 687.

properly excluded where admitted by the pleadings, and since the statute provided that fully paid stock is nonassessable unless made so by articles of incorporation, which were in evidence. (Page 517.)

6. TRIAL—REFUSAL OF INSTRUCTIONS—APPLICABILITY TO EVIDENCE. In the absence of evidence from which a general scheme to defraud could be inferred, refusal of instruction upon this question was not erroneous. (Page 517.)

7. TRIAL—REFUSAL OF ARGUMENTATIVE INSTRUCTIONS. Refusal to give argumentative instructions was no erroneous. (Page 517.)

8. APPEAL AND ERROR—REVIEW—DISCRETION OF COURT—ALLOWANCE OF COSTS. Where Comp. Laws 1907, Section 3341, placed the matter of allowing costs within the trial court's discretion where counterclaim was pleaded, the court's action will not be disturbed except for abuse of discretion. (Page 518.)

Appeal from District Court, Third District; *Hon. M. L. Ritchie,* Judge.

Action by Alma M. Smith against Jesse Gilbert.

Judgment for plaintiff. Defendant appeals.

AFFIRMED.

*Geo. Q. Rich* for appellant.

*Bagley & Ashton* and *Wilson McCarthy* for respondent.

FRICK, C. J.

The plaintiff brought this action against the defendant, hereinafter called appellant, to recover judgment upon a promissory note for the sum of $6,400. The appellant admitted the execution and delivery of the note in question, and alleged that the same was obtained by the plaintiff by fraud and false representations. The appellant, in his answer, averred that the note in question was executed and delivered by him to the plaintiff for certain other notes which had theretofore been made and delivered by the appellant to the plaintiff; that the original notes were obtained by means of false representations made by the plaintiff, which, in substance, are alleged to be as follows: That the original notes were given as the pur-

chase price of 3,000 shares of the capital stock of a certain
corporation known as the Universal Metallic Tie Company,
hereinafter designated tie company, or tie stock, as the case
may be, and as the purchase price of 3,000 shares of a certain
corporation known as the Dickerson Automatic Governor
Company, hereinafter styled a governor company, or governor
stock, as the case may be, all of which shares were of the par
value of one dollar each; that all of said shares were non-
assessable; that the total number of shares issued by each of
said corporations was 1,000,000 shares, one-half of which were
set apart as treasury stock which was owned by said corpora-
tions respectively; that the plaintiff was the sole agent of said
corporations, with the exclusive right to sell said treasury
stock; that no stock could be sold by the subscribers of stock
until the treasury stock was sold; that the proceeds to be de-
rived from the sale of said stock would be used exclusively by
the respective corporations for corporate purposes; that none
of the tie stock could be sold for less than par, and that some
had been sold for as high as $5 per share; that a number of
the great railroad companies east of the Mississippi River had
made tests of the metallic tie, and had pronounced it satis-
factory, and that they would use the same on their railroads;
that the Universal Metallic Tie Company was about to com-
mence the erection of a large tie factory near Pittsburg, Pa.,
and that the proceeds derived from the sale of the stock of-
fered to be sold by the plaintiff would be used for the purposes
aforesaid; that the Oregon Short Line Railroad Company had
adopted said tie, and had ordered it to be used on its railroad.
As to the governor stock it is averred that the plaintiff also
represented that the corporation had received for its products
during the preceding year a net profit of $40,000; that the
money derived from the sale of the stock offered by the plain-
tiff would be used in completing and equipping the com-
pany's factory at Salt Lake City, Utah. The plaintiff averred
that each and all of said representations were false. The ap-
pellant, by way of counter-claim, also alleged that before he
had discovered the falsity of the representations and state-
ments of the plaintiff respecting said stock he had paid two of
the original notes amounting to $500 which he had made and

delivered to the plaintiff for 500 shares of the tie stock, and after reiterating the false representations and statements in his counterclaim he demanded judgment for the $500 paid as aforesaid, with interest. The appellant, in his answer, also averred that he had tendered all of said 6,000 shares of stock to the plaintiff, and that he brought the same into court for the plaintiff, and demanded judgment for the cancellation and return of said note. The appellant also averred that the $6,400 note was obtained by fraud and duress after the original notes were due. The plaintiff filed a reply, in which he denied that he had made said false representations, or any of them. He admitted that the stock which appellant alleged he purchased as aforesaid was not treasury stock, but was his individual stock; that said corporations had no interest therein whatever; that the stock in question was assessable; and that the same was all sold for the sole use and benefit of the plaintiff. The issues were submitted to a jury, which returned a verdict that the appellant return to the plaintiff the 3,000 shares of tie stock, and that he recover from the plaintiff the $500 paid on said stock, which, with interest at the time of the trial, amounted to $713; that the plaintiff recover from the appellant the sum of $2,950 as the balance due on said governor stock. The plaintiff was thus given a verdict of $2,950 for the 3,000 shares of governor stock, and the appellant was given a verdict for the sum of $713 for the money paid on the tie stock, and was relieved from making any further payment upon the tie stock. The court deducted the $713 from the amount found due plaintiff on the governor stock, which left a balance in favor of plaintiff of $2,237, for which the court entered judgment. The appeal is from that judgment.

From appellant's brief it appears that the 3,000 shares of tie stock were sold on divers days between September, 1910, and May, 1911; that while the precise days on which the governor stock was sold does not appear, yet it was sold on divers days during 1911 and 1912. The exact dates or times when the sales were made are, however, not material. There were 3,000 shares of each stock sold at one dollar per share. The

appellant executed and delivered notes to the plaintiff from time to time as the stock was sold. There were two notes of $250 'each given for the tie stock which were paid by the appellant to the plaintiff. None of the other notes were paid, and all of them, with accrued interest, were subsequently, to wit, on the 19th day of January, 1914, merged in one note for the sum of $6,400, which is the note sued on. Appellant's defenses were directed to the whole consideration evidenced by the promissory notes aforesaid, and he demanded judgment for the cancellation of the $6,400 note, which was given in place of the original notes, as aforesaid, and also demanded judgment for the sum of $500, with interest, paid as aforesaid. While the representations respecting the various transactions are averred to have been practically the same in appellant's answer, yet the evidence respecting the governor stock, in many respects, greatly differs from the evidence relating to the tie stock. Considerable controversy arose between counsel of the respective parties during the trial respecting the character of the evidence that appellant might introduce with regard to the representations made by the • plaintiff to others than the appellant and the effect of such evidence.

The District Court, in ruling upon the admission of evidence, attempted to be governed by the rule laid down by this court in the case of *Trout & Resort Co.* v. *Lewis,* 41 Utah 183, 125 Pac. 687, where the rule is stated in the tenth headnote in the following words:

"False representations, similar to the ones involved in an action, are admissible where the intent, motive, or knowledge of their falsity by the party making them are material, or where it is sought to prove a system or general plan or scheme to defraud."

The court thus permitted appellant to prove by other witnesses to whom the plaintiff had sold some of the capital stock of said corporations about the time the appellant purchased the stock in question that the plaintiff had made representations and statements to them to the same effect as those which appellant testified were made to him concerning the stock. The court also permitted the appellant to testify that he believed the representations and statements made by the plain-

tiff to be true, and that he relied on them in entering into the contract of purchase and in executing and delivering the promissory notes. Counsel, however, also attempted to prove by other witnesses that they also believed the representations and statements made by the plaintiff to them to be true. Plaintiff's counsel objected to the proffered testimony as being irrelevant and immaterial, and the court sustained the objection. Appellant's counsel now insists that the court erred in its ruling in that respect.

We remark that there were four witnesses who testified for the appellant that they also bought some of the tie stock from the plaintiff, and that he had made similar representations and statements to them concerning the said stock that the appellant testified he made to him. Counsel offered to prove by all of those witnesses that they believed the representations and statements made by the plaintiff concerning the tie stock, and the court rejected the offer.

As before pointed out, the appellant prevailed in his claim respecting the tie stock, and hence whatever error the court may have committed, if any, respecting the admission or exclusion of evidence upon the issue relating to that stock, is wholly immaterial now, and hence is unavailing to the appellant. Counsel, however, says in his brief:

"Precisely the same state of facts was shown, or offered to be shown and proven, with regard to the respondent's operation in selling the stock of the Dickerson Automatic Governor Company. The two cases were in all respects parallel, the only difference in the two being that the latter stock scheme was operated just after the first one; but the respondent's system and his scheme was the same precisely in each case."

While appellant's counsel did not abstract the evidence relating to the governor stock, yet we have examined into it carefully, and we cannot agree with counsel that "the two cases were, in all respects, parallel." True, appellant's allegations in his answer were practically the same with respect to both stocks, but his own testimony respecting the transactions relating to the governor stock leave little room for doubt that he purchased that stock entirely upon his own judgment after

making full investigation into its merits by consulting others who possessed full information concerning the merits of the stock. The jury, no doubt, took that view, and hence required appellant to pay for the governor stock, although they sustained his contention respecting the tie stock.

Assuming, without deciding, that the appellant is in a position to complain of the court's ruling in excluding the proffered evidence of the one witness who testified to certain representations concerning the governor stock that the witness believed the representations to be true, did the exclusion of what that witness believed with respect to the alleged representations constitute error? We are clearly of the opinion that it did not. Suppose the witnesses to whom it is claimed plaintiff made representations like those the appellant claims were made to him should insist that they did not believe the representations to be true. Would their belief have affected appellant's rights in the premises in any way or to any extent? Clearly not. The question was not what others believed, but what did the plaintiff believe, and upon what did he rely in purchasing the stock and in executing and delivering the notes? True, the representations that the plaintiff made to others respecting the stock were relevant and material for the purposes stated in the case of *Trout & Resort Co.* v. *Lewis, supra.* Counsel, however, insists that the proffered evidence was also material and relevant to prove ''a system or general scheme to defraud.'' How what a witness believed respecting certain representations would establish a general plan or scheme to defraud we are utterly unable to understand.

Nor is it true that ''à system or general plan or scheme to defraud'' may be inferred merely because the vendor is charged with having made certain false representations and statements concerning the stock he was offering for sale. While such a plan or scheme may, perhaps, be inferred from some particular representations and statements that might be made respecting such a transaction, yet it may not be inferred simply because certain representations and statements respecting certain stock are alleged to be false. If it were assumed, therefore, that there were some representa-

tions or statements that were made respecting the tie stock from which some interested and biased person might possibly infer a general plan or scheme to defraud, yet, in view of appellant's own testimony, there was absolutely nothing of that kind with respect to the governor stock. In view of the record as it is presented the court committed no error in excluding the proffered evidence.

It, however, is also contended in this connection that the court erred in excluding from the jury certain stock certificates which represented stock in said corporations, and which were purchased from the plaintiff by the witnesses who testified for appellant. Those certificates were offered: (1) To show that the stock was not treasury stock; and (2) that it was not nonassessable stock. As to the first proposition the plaintiff had admitted in his reply that the stock in question was not treasury stock, and hence no proof was necessary on that point. As to the second proposition our statute provides that fully paid capital stock is nonassessable unless it is made so in the articles of incorporation, and then it is assessable only as therein provided. The court admitted in evidence the articles of incorporation, and hence the best evidence upon that subject was produced and admitted. But here again plaintiff's reply was a conclusive admission that the stock was assessable. No error was therefore committed in excluding the stock certificates.

Complaint is also made respecting instructions given by the court to the jury. The principal ground of complaint, however, is that the court refused to charge the jury that they might infer a general plan or scheme to defraud from the representations and statements made by plaintiff respecting the stock in question. As already suggested, there was absolutely nothing in the evidence from which the jury could legitimately have inferred a general plan or scheme to defraud, and hence the court did not err in refusing to so charge. Nor are the criticisms upon the court's charge, in that it restricted the jury in certain particulars, tenable. The charge was full and fair and covered every feature of the case. All the points that were properly covered by appellant's requests were fully covered in the

court's charge. The request that is especially relied on by appellant, and which was refused by the court, was properly refused if for no other reason than that it was merely an argument on particular portions of the evidence.

Finally, it is contended that the court erred in not awarding appellant the costs claimed by him. It appears that both parties to the action filed their cost bills. The court, **8** however, did not include the costs of either party in the judgment. As we have seen, the action was originally one merely to recover a money judgment. If the plaintiff had prevailed in the action as originally commenced, he, under Comp. Laws 1907, Section 3339, would have been entitled to a judgment for costs as a matter of course. There were, however, various defenses set up, including a counterclaim. Under the pleadings the action was finally tried as one to rescind a contract of purchase and to recover back certain money paid on the contract, and to place the parties in statu quo respecting the subject-matter of the contract. The plaintiff succeeded in part and the defendant succeeded in part. The case therefore, falls within Comp. Laws 1907, Section 3341, where the matter of allowing costs is remitted to the sound discretion of the trial court. We, therefore, can only review the court's action in refusing to allow costs in case the court has abused its discretion in that regard. There is nothing in this record from which we can say that the court has abused its discretion, and hence this assignment cannot prevail.

While we have not specifically referred to each one of counsel's assignments, yet we have considered all of them. Notwithstanding the fact that appellant's counsel has vigorously assailed the rulings of the trial court and the final judgment, we are thoroughly convinced that, in view of the whole record, much of counsel's complaint must be attributed to his zeal, and that he has no legal cause for complaint. We are further convinced that both the court and jury have awarded to the appellant all that he was entitled to under the law and the evidence.

The judgment is therefore affirmed. Respondent to recover costs.

McCARTY and CORFMAN, JJ., concur.