## INTERNATIONAL NEWS SERVICE v. NEWS PUBLISHING CO. et al.

No. 16559—Opinion Filed April 27, 1926.

Rehearing Denied June 8, 1926.

**1. Jury — "Impartial Juror"—Determination.**

Ordinarily, where a juror testifies that he believes he can, and the court finds as a matter of fact that he would, if selected, render an impartial verdict upon the evidence, he is an "impartial juror," under our Constitution and the statutes of this state.

**2. Evidence—Evidence of Similar Acts — Fraudulent Representations to Procure Contract.**

Where one claims to be injured by a contract procured through fraudulent representations, it is competent to show that the same party made like representations about the same time to other parties, with whom such party was attempting to make similar contracts, as tending to show motive or intent.

**3. Trial—Reception of Evidence—Time to Object—Motion to Strike.**

A party to a suit cannot speculate upon the testimony to be introduced by the adverse party, and, after the introduction of such testimony without objection, move to strike on the ground that such testimony is incompetent.

**4. Fraud — Gist of Fraudulent Misrepresentation.**

The gist of a fraudulent misrepresentation is the producing of a false impression upon the mind of the other party, and if this result is actually accomplished, the means of accomplishing it are immaterial.

**5. Appeal and Error—Inadequacy of Instructions—Necessity for Requests.**

It is a well settled rule in this state that

if the court's charge be not sufficiently full or sufficiently specific, it is the duty of the party who considers himself aggrieved thereby to request fuller or more specific instructions from the court, and if he fails so to do, there is no basis for an assignment of error to the giving of such instructions. The saving of exceptions thereto will not suffice, not being equivalent to a request for a fuller or more specific instruction. Missouri, O. & G. Ry. Co. v. Collins, 47 Okla. 761. 150 Pac. 142.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Garfield County; Chas. Swindall, Judge.

Action by International News Service against News Publishing Company of Enid and the Enid Publishing Company. Judgment for defendants, and plaintiff brings error. Affirmed.

H. Z. Wedgwood and Wm. A. De Ford, for plaintiff in error.

Simons, McKnight & Simons, for defendants in error.

Opinion by PINKHAM, C. This action was instituted by the plaintiff in error, International News Service, a corporation, as plaintiff, in the district court of Garfield county, against the News Publishing Company of Enid, a corporation, and the Enid Publishing Company, a corporation, both being Oklahoma corporations, to recover the sum of $936.22, with interest thereon, which sum plaintiff alleges is due it under and by virtue of a certain agreement made on the 8th day of December, 1921, for the period of one year, and which said agreement provides that it shall continue for one year from February 6, 1922, and shall thereafter renew itself for a period of one year unless either party notifies the other by registered letter at least six months before the end of any of said periods of its desire to terminate said agreement.

Plaintiff alleges that the News Publishing Company of Enid, Okla., was engaged in printing and publishing a daily newspaper, and that it entered into the above contract with the plaintiff to furnish it or its successors full day leased wire reports commencing February 6, 1922, for which service the said defendant contracted and agreed to pay to the plaintiff the sum of $80 per week in advance, and that after deducting the expenses of performing said contract the plaintiff earned a net profit of $18.56 per week, and that under said contract the plaintiff is entitled to recover for the unexpired portion, amounting to 51 1-3 weeks, or the total sum of $936.22, with interest, and that the plaintiff was at all times able, willing, and ready to perform its part of said contract, and that the defendant unlawfully and wrongfully breached said contract and refused to receive said news items mentioned in said contract.

The defendants by answer denied all of the allegations of plaintiff's petition, and in addition thereto the News Publishing Company alleged in its answer that the contract had been executed, but that the same was obtained by the plaintiff by fraud and misrepresentation, and that at the time the News Publishing Company executed said contract it was engaged in publishing a daily newspaper in the city of Enid, Okla., and was at that time taking news service from the United Press, from which it was obtaining a limited amount of news from the state of Oklahoma, termed "state news"; that at that time the United Press was not furnishing to said defendant as much state news as said defendant desired, and that said defendant was anxious to get and obtain additional news from the state of Oklahoma termed "state news" for publication in its paper,' and that all of said facts were known to the plaintiff; that on or about the 8th day of December, 1921, the plaintiff approached the said defendant for the purpose of entering into an agreement for the taking of news service designated as "leased wire reports," and at that time represented and stated to the said defendant that it had contracts with more than 12 Oklahoma newspapers, and that in obtaining the leased wire reports the said defendant would obtain through such service state news from all of the 12 or more points in the state of Oklahoma; that at that time the said defendant stated to the plaintiff that the sole consideration for the contract was and would be the obtaining of the state news: that at that time the said defendant had contracts for and was obtaining all of the general news from the East that it desired: that it only needed additional state news, and that at that time the plaintiff further stated and represented to the said defendant that if it would sign the contract in question, thereunder it would obtain and the plaintiff would furnish all of the state news desired by the said defendant.

The said defendant further alleged in its answer, that it is informed and believes and states as a fact, that at the time of the execution of said contract and at all times

since the date of said contract, the plaintiff did not have contracts with the newspapers and at the points heretofore designated, and that it knew at the time that the representations made to the defendant were untrue, and knew also that the said defendant was relying thereon; that it did rely on said representations so made and believed them to be true.

For its cross-petition the said defendant alleged that under and by virtue of said contract attached to plaintiff's petition, the said defendant has paid to the plaintiff the sum of $4,320; that said sum of money was obtained from the defendant by false and fraudulent representations as hereinbefore set forth in its answer, and that by reason of the fraudulent acts heretofore stated, it is entitled to a return of said sum from the plaintiff. The plaintiff for its reply denied the allegations of the answer and cross-petition, and pleaded estoppel. The case was tried before a jury, and a verdict was rendered in favor of the defendants. Plaintiff's motion for a new trial was overruled. exceptions saved, and judgment rendered in accordance with the jury's verdict.

For reversal of the judgment the plaintiff in error has presented a number of assignments of error. The first proposition presented is that one of the jurors, Charles Pittman, was disqualified as a juror.

The record discloses that on the motion for a new trial the plaintiff's attorney filed his affidavit in support of the same, the material part of which is "that upon examination on his voir dire, by this affiant, he (the juror, Pittman) was examined as to his acquaintance and relationship with Honorable M. C. Garber, who is president and one of the principal stockholders in the defendant Enid Publishing Company, and also was president and one of the principal stockholders in the defendant News Publishing Company, prior to the organization of the Enid Publishing Company. Also, that he is Congressman from this district to the Congress of the United States. And affiant is informed that as such Congressman, he was instrumental in getting the wife of said Charles Pittman appointed postmistress at Waukomis, Okla., a position which she now holds; that upon his said examination the said Charles Pittman, though interrogated thereon, did not disclose this matter; and, further, he announced that he knew of no reason why he could not sit as a fair and impartial juror and return a verdict based upon the evidence adduced, and the law as given him by the court; that

the appointment of said juror's wife to said position having been a contested matter, affiant believes that the relation between said juror and the said M. C. Garber, taken in connection with the interest of said Congressman Garber in the defendants, was sufficient to prejudice said juror and cause him to show partiality in favor of the defendants; and had said juror fully disclosed his said relation and connection to and with said M. C. Garber, plaintiff would have excluded him from the jury upon challenge; that affiant nor plaintiff did not learn of the facts aforesaid until after the trial had begun, the jury had been impaneled and sworn to try the case, and when it was too late for plaintiff to avail itself of the right to challenge and exclude said juror from said panel.

It will be observed that the affidavit, as presented in support of the motion for a new trial, does not state as a fact that M. C. Garber was instrumental in having Mrs. Pittman appointed, but only that affiant was informed of such fact, and affiant does not state that the relation between the juror and Mr. Garber was sufficient to prejudice the juror, but only that he believes such fact to be true. Neither does affiant state when the appointment or the recommendation was made, or that the juror had any connection with it. The juror, Pittman, testified according to the affidavit submitted on the motion for a new trial that "he knew of no reason why he could not sit as a fair and impartial juror and return a verdict based upon the evidence adduced and the law given him by the court."

The mere fact that his wife had been recommended by Congressman Garber for the position of postmistress did not, we think, disqualify Mr. Pittman as a juror. Ordinarily. where a juror testifies that he believes he can, and the court finds as a matter of fact that he would, if selected, render an impartial verdict upon the evidence, he is an impartial juror, under our Constitution and the statutes of this state. Littrell v. State, 19 Okla. Cr. ——, 209 Pac. 184.

We think the affidavit in question clearly insufficient to authorize the court to grant a new trial.

The next proposition presented is that the court erred in refusing and ruling out competent and legal evidence on the part of the plaintiff in error. It is contended under this proposition that it was not permitted to show the value of the property acquired

by the Enid Publishing Company, and the case of Collinsville Nat. Bank v. Esau et al., 74 Okla. 45, 176 Pac. 514, is cited in support of the proposition presented. The case cited states in effect that upon a merger of two corporations, the corporation taking over the property and assets is liable to the extent of the property and assets received, but the case does not hold that the value of the property is material. It is not contended that the Enid Publishing Company did not have sufficient assets to pay any judgment rendered against it, or that the News Publishing Company did not have ample assets to satisfy any judgment rendered against it.

Furthermore, the fact that no judgment was rendered against the Enid Publishing Company shows that if there was an error made by the trial court in ruling out such evidence such error was harmless.

It is further contended that the court erred in admitting evidence on the part of the defendants in error. Under this proposition the testimony of a witness—W. M. Taylor—is referred to, wherein he stated that he had a conversation with one C. B. Travis, who was the agent of the plaintiff in error in regard to the purchase of the contract with the International News Service. This witness stated, in answer to questions propounded to him by counsel for defendants in error. that he was the manager of the Enid Daily News; that in a conversation with the agent of the plaintiff in error, the said agent stated to the witness "that he had sold his service to the News (defendant in error) and the News was going to throw out the U. P."; that "when he was trying to sell the service to me he represented what they were going to do in the way of establishing their service in various newspapers in Oklahoma, particularly in the northern part of the state, whereby they would be enabled with such service to render an excellent state wire service." It appears that this evidence was offered for the purpose of showing the intent and motive of the plaintiff in error, and that it was a scheme to defraud anyone who would buy that service, and therefore corroborated the testimony of other witnesses.

It is contended that this evidence was immaterial, hearsay, and prejudicial, and the case of Ogden Valley Trout & Resort Co. v. Lewis (Utah) 125 Pac. 687. is cited, among others. in support of the proposition, wherein the court said:

"There is no doubt that the weight of authority is that similar independent statements or representations made to others, in the absence of the person to whom those in controversy were made, and of which such person had no knowledge at the time he acted, and hence could not have influenced him to act, are not admissible as evidence from which it may be inferred that the representations in issue were in fact made. * * *"

The court in the case cited and relied on further held:

"Statements or representations made to others are, however, relevant where the intent, motive, or knowledge of the falsity of the representations of the party making them are material, or to prove a system or general plan or scheme to defraud."

In McCauley v. Custer (Kan.) 143 Pac. 489, it is held in the first paragraph of the syllabus:

"Where one claims to be injured by a contract procured through fraudulent representations, it is competent to show that the same party made like representations about the same time to other parties. with whom such party was attempting to make similar contracts, as tending to show motive or intent."

Furthermore, it appears the testimony of W. M. Taylor was introduced without objection, and after it had been introduced counsel for plaintiff in error then made objection and moved to strike the testimony from the record. The rule has been announced in several decisions of this court, that a party to a suit cannot speculate on the testimony to be introduced by the adverse party, and after the introduction of such testimony without objection, move to strike on the ground that such testimony is incompetent. McKee v. Thornton, 79 Okla. 138, 192 Pac. 212: Brownell v. Morehead, **65 Okla. 218, 165 Pac. 408.**

It is further urged that the allegations of fraud set out in the answer and cross-petition were not proven. Counsel for plaintiff in error say in their brief:

"The defendants in their answer set up two grounds of misrepresentations as elements of fraud: (1) Plaintiff falsely represented that it had contracts with some 12 newspapers from whom it would be able to get state news. (2) That plaintiff would be able to and would furnish the defendant News Publishing Company (in the future) all the state news it would need to meet its competitor."

—and it is contended that defendants' evidence wholly fails to establish either of these grounds. and authorities are cited to the effect that the gist of the fraud in a

case of the kind involved here is the bad faith of, the promisor—that the promisor made it without any intention of performance, citing Rogers v. Harris, 76 Okla. 215, 184 Pac. 459.

The rule announced in the case cited, and in other cases of the same import, is not applicable to the facts disclosed in the instant case.

An examination of the testimony adduced on the trial clearly shows that the contract in question was entered into by the News Publishing Company on the representation that the plaintiff in error had a string of newspapers in Oklahoma, whereby state news would be furnished the defendant in error. The evidence tends to show that the plaintiff did not have these papers from which this state news could be had by the News Publishing Company. The evidence shows that the representation of the agent of the plaintiff in error was that it was in a position to cover the state of Oklahoma and to furnish the state news required by the defendant in error, and that some 12 Oklahoma newspapers were then ready to furnish such state news, when, as a matter of fact, it appears from the evidence that papers specifically mentioned by the agent of the plaintiff in error were not then and never have been in the plaintiff in error's service.

The gist of a fraudulent misrepresentation is the producing of a false impression upon the mind of the other party, and if this result is actually accomplished, the means of accomplishing it are immaterial. Hankins v. Farmers & Merchants Bank, 42 Okla. 330, 141 Pac. 272.

The contention that instruction No. 8 given by the court is erroneous cannot be sustained. The instruction criticised is as follows:

"You are further instructed that to constitute actionable fraud it must be made to appear that plaintiff, or its agent, made a material representation; that it was false; that when the plaintiff, or its agent, made such representation it knew that it was false or made it recklessly, without any knowledge of its truth, and as a positive assertion; that plaintiff, or its agent, made such representation with the intention that it would be acted upon by the defendant News Publishing Company, and that the News Publishing Company acted in reliance upon such representation, and that it thereby suffered injury."

All of the essential elements of fraud are, we think, incorporated in the instruction complained of, and when it is considered in connection with other instructions given by the court, we think it clear the jury could not have been misled thereby. The criticism is that the instruction given should have set forth specifically that fraud was not actionable unless covering a misrepresentation of an existing or past fact, and not acts to be performed in the future. The representations of future acts to be performed were not material, and if in the opinion of counsel for plaintiff in error the instruction was likely to be misunderstood by the jury, it was the duty of counsel for plaintiff in error to call the court's attention to the same and request an instruction embodying their theory.

It is a well-settled rule in this state, that if the court's charge be not sufficiently full, or sufficiently specific, it is the duty of the party who considers himself aggrieved thereby, to request fuller or more specific instructions from the court, and if he fails so to do, there is no basis for an assignment of error to the giving of such instructions. The saving of exceptions thereto will not suffice, not being equivalent to a request for a fuller or more specific instruction. Missouri, O. & G. Ry. Co. v. Collins, 47 Okla. 761, 777, 150 Pac. 142.

It is finally urged that the court's instruction No. 12 is erroneous, and that plaintiff's requested instruction No. 2 should have been given in place of the instruction complained of. Instruction No. 12 was based upon the evidence that the agent of the News Publishing Company had written a letter to the plaintiff in error canceling the contract in question as directed by the manager of the defendant in error News Publishing Company. The letter, which was introduced in evidence, after canceling the contract, contained language to the effect that the reason for canceling the contract, was that the general business conditions existing in the city of Enid no longer required that service, and expressing appreciation of the service already given.

It is the theory of plaintiff in error that this letter did not demand the cancellation of the contract in question for fraud, prior to the commencement of the action, but gave a different reason for its conduct, and that defendants in error are therefore estopped from placing their reason for cancellation upon this new and different ground.

It appears that the letter referred to was written by one Harry T. Leonard, who was in the employ of the News Publishing Company, and in charge of its business department. There is no dispute in the testi-

mony as to the instructions given to Mr. Leonard by the vice-president and general manager of the News Publishing Company, which instructions were that he, Leonard, should write the plaintiff in error that the contract was canceled. Mr. Dunlap, the general manager of the said defendant in error, testified that he instructed Mr. Leonard to write to the plaintiff in error to cancel the service, and that Mr. Leonard's duty was to look after the collections and to do whatever he was instructed to do; that he, the general manager, did not see this letter at the time it was written, and did not sign it, and that the News Publishing company had no knowledge of what had been written to the plaintiff in error by Mr. Leonard.

It is the theory of defendants in error that as far as the cancellation of the contract was concerned Mr. Leonard followed the general manager's instructions, but that what Mr. Leonard added as to the reason for the cancellation of the contract was without authority from the said defendant in error.

The court specifically instructed the jury in this connection, that the burden was upon the plaintiff to prove by a preponderance of the evidence that the said letter was written by Mr. Dunlap, defendant's vice-president and general manager, or under his directions, and that the News Publishing Company would not be liable for the acts of its agents, or any representations or statements made by them, unless within the authority actually given, and that the News Publishing Company would not be estopped from asserting its defense by said letter unless the same was written by the said Dunlap or under his directions, and unless the same was in accordance with the authority given by him as vice-president and general manager, or some agent or representative of the News Publishing Company; but that in the event the jury should find that said letter was written by the said E. C. Dunlap, or under his directions, or authorized by him, and that by the terms of said letter the News Publishing Company sought to cancel the contract sued on, and to do so, gave as its only reason that it was the general business condition in Enid, and the fact that it found the News too small to make full use of the service being furnished it by the plaintiff, after it had been using said service and with knowledge of the service it had received, that then and in that event it would not be permitted to claim that the service furnished it under said contract was not satisfactory and such as was contemplated and agreed upon, or that said contract was obtained through fraud and misrepresentation, and that under such conditions as last mentioned, the defendants would be estopped from setting up and relying upon such defendant, and that the jury's verdict should be for the plaintiff.

The instruction complained of was full and complete, and properly covered plaintiff in error's theory of the case, as we view it.

We conclude upon an examination of the whole case that there was competent evidence reasonably tending to support the verdict of the jury, and that the judgment based thereon should be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 35 C. J. p. 333 § 360. (2) 22 C. J. p. 747 § 836; 27 C. J. p. 60 § 198. (3) 38 Cyc. p. 1406. (4) 26 C. J. p. 1066 § 8. (5) 3 C. J. pp. 852, 853, 854, § 756; 38 Cyc. pp. 1694, 1695.