Note.—See under (1) 19 C. J. p. 24, §30; p. 193, §479. (2) 19 C. J. p. 49, §88; p. 50, §89; anno. 18 L. R. A. (N. S.) 305; 34 L. R. A. (N. S.) 360; 9 R. C. L. p. 343; 2 R. C. L. p. 783; 4 R. C. L. Supp. p. 603. (3) 19 C. J. p. 193, §479; 2 R. C. L. p. 194; 1 R. C. L. Supp. p. 432; 4 R. C. L. Supp. 90; 5 R. C. L. Supp. p. 80; 6 R. C. L. Supp. p. 73. (4) 19 C. J. p. 142, §367.

---

**LEWIS, Trustee, v. MANNING et al.**

No. 15854—Opinion Filed Feb. 16, 1926.

Rehearing Denied Feb. 22, 1927.

**1. Fraudulent Conveyances—Gifts by Debtor Made More than Four Months Prior to Bankruptcy.**

Creditors have the right to pursue and reclaim property fraudulently transferred by an insolvent debtor as a voluntary gift made more than four months prior to the bankruptcy.

**2. Same—Proof of Fraud—Circumstances.**

It is not necessary that fraud should be

established by direct proof; for such purpose it is competent to resort to circumstantial or presumptive evidence.

3. **Same—Action to Set Aside Conveyance to Relatives—Defense—Good Faith — Burden of Proof.**

In a suit by a trustee in bankruptcy to set aside an alleged fraudulent transfer of property by the bankrupt to his relatives, the burden is upon the defendant to show valid consideration and good faith.

4. **Same—Conveyance for Past Consideration or to Pay Unsecured Debt—Voidability.**

A transfer of property for a past consideration or in discharge of an unsecured debt will generally be voidable either as a preference or as a fraud on the creditors.

5. **Bankruptcy—Right of Trustee to Avoid Transfers by Bankrupt.**

The trustee may avoid any transfer by the bankrupt of his property which any creditor of any such bankrupt might have avoided and may recover the property so transferred or its value from the person to whom it was transferred unless he was a bona fide holder for value prior to the date of adjudication. Such property may be recovered or its value collected from whoever may have received it except a bona fide holder for value. (Bankruptcy Act. sec. 70 (e), U. S. Comp. St.)

6. **Fraudulent Conveyances—Statute.**

The Oklahoma statute, section 5271, C. S. 1921, provides: "Every conveyance of real estate or any interest therein, and every mortgage or other instrument in any way affecting the same, made without a fair and valuable consideration, or made in bad faith, or for the purpose of hindering, delaying, or defrauding creditors, shall be void as against all persons to whom the maker is at the time indebted or under any legal liability."

(Syllabus by Maxey, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Murray County; A. C. Barrett, Judge.

Action by W. N. Lewis, trustee in bankruptcy, and others against J. R. Manning and others to set aside certain conveyances on the ground of fraud. Judgment for defendants, and plaintiffs appeal. Reversed.

This suit originated on the 16th day of November, 1922, by the Exchange National Bank of Ardmore, Okla., a banking corporation, against J. R. Manning, J. L. Fairchild, Lela Embree, Melissa Bland, Lela Embree, as trustee for Oma Ross, Ruth Ross and Mayme Ross, minors.

In plaintiff's petition it alleges that on the 25th day of September, 1922, the defendant J. R. Manning was the owner in fee simple of all the real estate hereinafter described and set forth, and that upon said date he was and still is indebted to various creditors, including this plaintiff, his indebtedness to this plaintiff being $7,000; that on the 25th day of September, 1922, defendant J. R. Manning, with intent to defraud and delay his creditors, including the plaintiff, and without valuable consideration, conveyed to J. L. Fairchild the following described real estate: The southwest 9.49 of lot 2 of section 7, township 1' north, range 4 east, and the northwest quarter of the southwest quarter of section 12, township 1 north, range 3 east, in Murray county, Okla. Then follow the allegations of conveyances to the other defendants of various tracts of land in Murray county, amounting in the aggregate to about 1,320 acres and plaintiff asks to have said conveyances set aside on the ground of fraud and the land subjected to the payment of debts of J. R. Manning.

On the 27th day of November, 1922, the Commerce Trust Company obtained leave and filed its intervention in said suit. wherein it alleged that it was a corporation originated under the laws of the state of Missouri, with its principal office at Kansas City, Mo., and that it was engaged in the banking business; then sets up that on the 25th day of September, 1922, J. R. Manning was the owner in fee of all the real estate herein described, and upon said date was indebted to various creditors, including this intervener; the intervener's indebtedness being $2,000. It then sets out a list of the same land described in the petition of the Exchange National Bank of Ardmore, and prays for a cancellation of all of said instruments, and thereafter, on the 28th day of November, 1922, the Exchange National Bank of Ardmore filed a petition for leave to intervene and foreclose their lien on certain properties described therein. Leave to intervene was granted on the 27th day of November, 1922. Various motions and demurrers were interposed to the pleadings, which it is not necessary to notice here. On the 28th day of May, 1923, while the aforesaid suits were still pending and undetermined, W. N. Lewis, trustee in bankruptcy of the estate of J. R. Manning, bankrupt, entered his appearance in said cause, and adopted and reaffirmed each and every allegation and statement contained in the petition filed in this cause by the Exchange National Bank of Ardmore, and adopted said petition as his petition and prayer for relief on behalf of the estate and the creditors of J. R. Manning, and asked for cancellation of the instruments heretofore set

out. The various motions and demurrers were overruled by the court, and the defendants filed answers in which they set up that conveyances made to each of them were made in good faith; and the answer of J. L. Fairchild and Mollie F. Manning, wife of J. L. Manning, set up that the conveyances to them were made for a valuable consideration paid by them to said J. R. Manning and the other defendants, children and relatives of J. R. Manning, to whom he had conveyed portions of said land for the consideration expressed in the deed, of love and affection. No other consideration for these conveyances is alleged or proven.

On the 29th day of August, 1923, an amendment to the plaintiffs' petition was filed, alleging the insolvency of J. L. Manning at the time of said conveyance, and that a judgment and execution would have been unavailing; and thereafter, on the 29th day of August, 1923, W. N. Lewis, trustee in bankruptcy, by leave of court, filed his amendment to his plea of intervention, wherein he again adopts the petition and amendment thereto of the plaintiff, Exchange National Bank of Ardmore. An order was made appointing a guardian ad litem for the minors, and John C. Powers, guardian ad litem, filed a formal answer for said minors. A reply was filed to said answers of all of the defendants. and after the issues were made up. a motion was made by the interveners, W. N. Lewis, as trustee of J. L. Manning, bankrupt. for judgment on the pleadings, which motion was overruled, and the parties by their attorneys then stipulated as to the following facts:

"That J. R. Manning on March 12, 1923, filed his voluntary petition in bankruptcy in the United States District Court of the Eastern District of Oklahoma, and was adjudicated a voluntary bankrupt on the same day.

"That the value of his assets, as shown by his petition and schedule in bankruptcy, was $59,776.34, and that the amount of his liabilities, as shown by said petition and schedule, was $82,234.59; that no dividend has been paid by said bankrupt estate and that there are debts still unpaid; that the estate of said bankrupt will not be sufficient to pay the liabilities against said J. R. Manning; that among said liabilities there are obligations which were in existence prior to September 25, 1922, and that said obligations are now unpaid.

"That the Farmers Mercantile Company, a corporation of Sulphur, Okla., was adjudicated a bankrupt on the 24th day of November, 1922; that the petition in bankruptcy thereon was filed the 16th day of October, 1922.

"That the trustee in bankruptcy of the estate of J. R. Manning is W. N. Lewis; that said W. N. Lewis has been authorized by the bankrupt court to intervene on the part of the creditors of the said J. R. Manning, bankrupt.

"That J. R. Manning was insolvent at the date of the transfers complained of herein."

The trustee in bankruptcy then filed his request for the court to make findings of fact and conclusions of law, and set out among them points that he desired the court to find on. The evidence was then heard, which in brief shows that Manning had been a successful merchant at Sulphur for several years, and up to a short time before he went into bankruptcy he had a good credit based largely on the amount of lands that he owned; that he made frequent statements to banks with which he dealt and borrowed money, in which he included all of the lands described in the petition as belonging to him; and it was largely on these statements that he obtained credit. C. G. White testified that he had lived in Sulphur since 1911, and had known J. R. Manning since that time, and was at one time a partner of Manning's; that J. L. Fairchild was a brother-in-law of J. R. Manning, and that Mollie F. Manning was the wife of J. R. Manning; that J. R. Manning was the grandfather of Maymie Ross, Oma Ross, and Ruth Ross; that the mother died some three or four years before the trial of this case; that Manning was also connected with the Farmers Mercantile Company and manager and vice president; that at a meeting or conference held about ten days prior to the filing of bankruptcy proceedings by the Farmers Mercantile Company of Sulphur, it was decided to let the company go into bankruptcy. Mr. White said at this conference it was agreed among all the parties that a petition of bankruptcy should be filed, which was done. The Farmers Mercantile Company of Sulphur went into bankruptcy something like five months before the Sulphur Mercantile Company, which was another company that Manning was interested in; that the credit statement made by Manning was written out by him (White) from memoranda that Manning furnished him as to his assets and liabilities, and that he wrote them down just as he gave them to him, and the statement herein included in evidence is a correct statement from the figures furnished by Mr. Manning. This statement shows assets in the sum of $91,700 and liabilities $26,000; networth $65,700. This statement is dated June 15, 1922. In it is listed 1320 acres of land at $50 an acre, amounting to $66,000, which includes the land con-

veyed to his wife, Fairchild, and his children and grandchildren.

There is no controversy about Manning being indebted to Fairchild and his wife. It seems that he had been getting money from his wife for several years, and that at the time of the conveyance to her, he owed her something like $4,000, and he also owed Fairchild something like $2,000, which he had owed for several years. The trial court found that there was no fraud connected with any of the sales or conveyances of real estate, and entered judgment for the defendants Mollie F. Manning and J. L. Fairchild, and the minor defendants, and denied the trustee in bankruptcy any relief whatever. The court at the close of the testimony refused to make findings of fact or conclusions of law, but simply entered judgment, finding that there was no fraud in any of the transactions, and that the defendants were entitled to hold the lands conveyed to them under their conveyance. A motion for new trial was filed, overruled, time taken to prepare and present case-made, and the same was within the time passed, settled and signed, and the case is now before this court for review.

R. L. Disney, for plaintiff in error.

H. W. Fielding, for defendants in error.

Opinion by MAXEY, C. There are six assignments of error in the petition in error, and the first and sixth are taken up together in plaintiff in error's brief, which are: The court erred in overruling the motion of the plaintiff in error for a new trial. The court erred in that said judgment was contrary to the law and the evidence adduced in this case. These two assignments of error practically cover all of the others. It is contended by the plaintiff in error that, since this action is prosecuted by the trustee in bankruptcy, it is an action under section 70 (e) of the Bankruptcy Act. (U. S. Comp. St. 9654), which provides as follows:

"* * * The trustee may avoid any transfer by the bankrupt of his property which any creditor of any such bankrupt might have avoided and may recover the property so transferred or its value from the person to whom it was transferred unless he was a bona fide holder for value prior to the date of adjudication. Such property may be recovered or its value collected from whoever may have received it except a bona fide holder for value. * * *"

Under this section, it is not necessary to prove any fraud or fraudulent intent on the part of the transferee, and, with that in mind, to call most particular attention to the fact that really the only thing that

the trial court concluded in this case is that there was no fraud; the court is simply "of the opinion that the conveyances complained of herein and made by the defendant J. R. Manning were not fraudulent, and that there was no fraud in connection with the same," this action being founded on the above section, and not upon section 67 (e), which is directed at conveyances made within four months prior to the filing of the petition, with the intention to hinder, delay, or defraud his creditors. Section 70 (e) is not only limited to a consideration of transfers within four months prior to the adjudication, but it likewise is not limited to cases of fraud. It merely means, in short, that the trustee can avoid any transfer which any creditor could have avoided under the laws of the state. The burden is therefore upon the plaintiff to show that under the laws of the state of Oklahoma a creditor of J. R. Manning could have avoided these transfers. Yet the court evidently thought it was a case requiring a strong showing of fraud, if arising prior to four months. In the first place, a trustee in bankruptcy has the same right as a creditor armed with an attachment or an execution. Collier on Bankruptcy (12th Ed.) 1180; Zartman v. First National Bank, 19 Am. Bankr. Rep. 27, 189 N. Y. 267. The defendant relies upon section 5271, C. S. 1921, which reads as follows:

"Every conveyance of real estate or any interest therein, and every mortgage or other instrument in any way affecting the same, made without a fair and valuable consideration, or made in bad faith, or for the purpose of hindering, delaying or defrauding creditors, shall be void as against all persons to whom the maker is at the time indebted or under any legal liability."

And on section 6020, C. S. 1921, which is is follows:

"Every transfer of property or charge thereon made, every obligation incurred, and every judicial proceeding taken, with intent to delay or defraud any creditor or other person of his demands, is void against all creditors of the debtor, and their successors in interest, and against any persons upon whom the estate of the debtors devolves in trust for the benefit of others than the debtor."

Section 5271, supra, is the controlling section, in our judgment, in this case, as it avoids a conveyance "made without a fair and valuable consideration, or made in bad faith, or for the purpose of hindering, delaying or defrauding creditors," as the section puts it. "void as against all persons to whom the maker is at the time indebted, or any other legal liability." The

record in this case shows, without controversy, that at the time of the institution of this action by the Exchange National Bank, J. R. Manning was indebted and under legal liability to at least the Exchange National Bank and the Commerce Trust Company, and this is the gist of the action, that if the conveyance complained of was made "without a fair and valuable consideration," or if the conveyances were made for the purpose of hindering creditors, then the plaintiff should prevail; and that the judgment of the trial court was erroneous notwithstanding its findings that there was no fraud. Under section 67 (e) of the Bankruptcy Act, we call attention to the case of Ward v. Wiggins, 73 Okla. 46, 174 Pac. 231, which is a case from this court and construes section 5271, and sustains the contention of plaintiff in error. In the body of the opinion, the court says:

"It will be observed that such section provides that a conveyance of real estate 'without a fair and valuable consideration' is void as to creditors, and likewise void 'if made in bad faith or for the purpose of hindering, delaying or defrauding, creditors.' Hence, if the defendant F. C. Ward was indebted to the plaintiff at the time the transfer was made, and the conveyance was 'without a fair and valuable consideration', it would follow that the conveyance would be void as to the plaintiff, whether or not the same was 'made in bad faith or for the purpose of hindering, delaying or defrauding creditors'."

And in the case of Adams v. Wallace, 94 Okla. 73. 220 Pac. 872, the court says:

"The statutes against fraudulent conveyances should be liberally construed so as to include within their protection all persons who have interests and demands of which they may be defrauded."

There are numerous decisions from the American Bankruptcy Reports which bear on the question involved in this case, and while they are taken from the different states, they as a whole make up a line of decisions that govern in cases of this kind. In the case reported as Irwin v. Maple, 41 Am. Bankr. Rep. 532, the court was construing the statute of Ohio, and it said that:

"If any creditor of the bankrupt might, under statutes of the state of Ohio, have avoided a mortgage executed by the bankrupt, the trustee may avoid it."

Another case construing the statute of Ohio, which we may say is very similar to our statute (section 6020, C. S. 1921), is the case of Barber v. Coit, 16 Am. Bankr. Rep. 419. In this case the court is construing the Ohio statute which seems to be identical

with our section 5271, C. S. 1921. The first paragraph of the syllabus of this case says:

"In an action to set aside the transfer under a statute (Rev. St. Ohio, sec. 6343, as amended in 1898), providing that transfers made with intent to hinder, delay, or defraud creditors may be declared void at the suit of any creditor, actual fraud or intent to defraud need not be shown."

Black on Bankruptcy (3rd Ed.) paragraph 454, is as follows:

"By the express provisions of the bankruptcy law all transfers, conveyances, or incumbrances of property made by an insolvent debtor, within four months before his bankruptcy, are voidable at the suit of the trustee in bankruptcy, if held null and void against creditors by the law of the state, whether or not they would be voidable at common law, and whether or not within the specific denouncements of the Bankruptcy Act. Thus, where the action is to set aside a conveyance alleged to be fraudulent and void under the state law, actual fraud or an actual fraudulent intent is not necessary to be made out unless the state requires it. If that law avoids, as to creditors, transactions only presumptively fraudulent, or attended by 'legal' as distinguished from 'actual' fraud, the same will be void at the suit of the trustee in bankruptcy. And in determining the validity of any transfer, or incumbrance alleged to be voidable under the law of the state, and assailed distinctly on that ground, the courts of bankruptcy will follow and be governed by the applicable decisions of the courts of the state. In the case of a conflict of laws, where the transfer sought to be set aside was a transfer of real property, the law of that state will govern in which the property is situated."

It is shown by the record in this case, and even in the pleadings, that the transfers were made voluntarily and have no valuable consideration. It seems to be the universal construction by the courts of section 70 (e) of the Bankruptcy Act. that the four months period is not material. Black on Bankruptcy, page 943, section 445, in discussing section 70 (e), says:

"But it is significant that this clause omits all reference to the four months' limitation. And consequently it is held that if there be any kind of transfer of property which a creditor of the grantor might have avoided, though it was neither made with intent to delay nor defraud creditors, nor is denounced as void by the laws of the state, then the trustee in bankruptcy may avoid it, and without any regard to the time when it was made as compared with the date of bankruptcy."

And again, on page 968, in discussing section 70 (e), Black says:

"But it omits any mention of a limitation

of time within which the transfer of property must have been made, and the courts have unanimously decided that, if a trustee in bankruptcy bases his suit distinctly on this provision of the statute—that is, on his statutory right to avoid any transfer of property which any creditor of the bankrupt might have avoided—then it is immaterial whether the transfer or conveyance which he attacks was made more or less than four months before the filing of the petition in bankruptcy."

Another case bearing on this subject is Thomas v. Fletcher, 18 Am. Bankr. Rep. 623, and also the case of In re Toothaker Bros., 12 Am. Bankr. Rep. 99, and the case of In re Schenk, 8 Am. Bankr. Rep. 727, where it is held that:

"Creditors have the right to pursue and reclaim property fraudulently transferred by an insolvent debtor as a voluntary gift made more than four months prior to the bankruptcy."

In the case of Swan v. Bailey, 71 Okla. 30, 174 Pac. 1065, Chief Justice Sharp of this court says:

"It was not necessary that fraud should be established by direct proof; for such purpose it was competent to resort to circumstantial or presumptive evidence."

See, also, Wimberly v. Winstock, 46 Okla. 645, 149 Pac. 238, where the court says:

"It is often impossible to prove actual fraud and collusion * * * by direct and positive evidence, and the attacking party is often compelled to rely upon presumptive evidence."

In the case of Adams, Trustee, v. Osley, 42 Am. Bankr. Rep. 665, the court says:

"In a suit by trustee in bankruptcy to set aside an alleged fraudulent transfer of property by the bankrupt through the son to his wife, the burden is upon the defendant to show valid consideration and good faith."

On page 949, Black on Bankruptcy says:

"A transfer of property for a past consideration or in discharge of an unsecured debt, will generally be voidable either as a preference or as a fraud on the creditors."

And again, on page 972, he states:

"A sale * * * is not voidable * * * if the purchaser * * * took the same in good faith and gave a present consideration fairly proportioned to the value of the property, irrespective of the motive or purpose of the bankrupt."

In 27 C. J. page 548, it is held that:

"Where a father purchased land and paid the purchase money, declaring at the time that it was for his son for whom he intended

it as an advancement, and four years thereafter he caused the vendor to execute a deed to the son, the son was not entitled to hold the land against those who became creditors of the father between the time of the purchase and the conveyance."

And the case of Bank of Willows v. Small (Cal.) 78 Pac. 263, is one in which the mother expressed the intention of transferring land to her son, and permitted him for some years to take the rents and profits, but retained the title until she had incurred a large indebtedness as surety, when she conveyed the land to her son. It was held that the conveyance should not be sustained as against her creditors. In a recent case in this court, Lamb v. Ulrich, 94 Okla. 240, 221 Pac. 741, decided a few months ago, this court said:

"A bank or a business concern may be considered to be acting in contemplation of insolvency when in making some disposition of its assets it is actuated by its knowledge of its insolvency."

And Corpus Juris, vol. 27, 501, says:

"A conclusive presumption that the transfer was made with the intent to hinder, delay, or defraud creditors arises from the act of conveyance itself, since it cannot be made without hindering, delaying, or defrauding creditors."

The proposition that conveyances must be made in good faith is too well established to require the citation of authorities in this case. Manning on October 10, 1923, made these conveyances. Can it be said that he acted in good faith in transferring to his wife and children large quantities of real estate upon the same day he, the vice president and general manager of the company which broke him, took part in a meeting at which it was decided that that company was bankrupt, and that a petition in bankrutcy was filed a few days later by Manning himself? As to Fairchild, the brother-in-law, and the wife, who secured conveyances for indebtedness claimed to be due them of several years' standing, we will have more to say hereafter. Manning claims that he gave this land conveyed to the children to them in 1904, and that they collected the rents from that time forward, while the record shows that at least a part of the land conveyed to his children was not acquired by him until in 1919. If Manning was indebted to his wife and his brother-in-law, Fairchild, and under obligations to make them deeds or secure them, the fact that he did not do so, in our judgment, was a fraud upon his creditors, especially where as late as 1922, he made a statement to Mr. White, in order to secure credit at his bank, in which he included all of the lands conveyed to his wife and his brother-in-law and

nis children and grandchildren as part of his estate.

There are many other authorities that we could cite, bearing on the issues in this case, but we are thoroughly convinced that the acts of Manning in concealing his property until two days before he filed his petition in bankruptcy were a fraud upon his creditors, and should have been set aside by the court.

There is one other point that is made which we think is well taken, and that is, that the plaintiff below, plaintiff in error here, requested the trial court to make findings of fact and conclusions of law, and the trial court refused to do so.

Under section 556, C. S. 1921, it has been held that this section is mandatory, and when requests are made at the proper time, the court has no discretion in the matter, and refusal to grant same will cause a reversal. Thompson v. Russell, 1 Okla. 225, 32 Pac. 56, citing a number of cases supporting the rule from the state of Kansas, from which state this section of our statute was taken.

On the whole case, we hold that the judgment of the trial court was erroneous, and should be set aside, and judgment entered for the plaintiff in error, the trustee in bankruptcy.

By the Court: It is so ordered.

Note.—See under (1) 27 C. J. p. 548 §248; 10 L. R. A. (N. S.) 305; 3 R. C. L. p. 296. (2) 27 C. J. p. 822 §771; 12 R. C. L. p. 496; 2 R. C. L. p. 1436; 4 R. C. L. Supp. 760. (3) 27 C. J. p. 788 §715; 12 R. C. L. Supp. p. 594; 2 R. C. L. Supp. p. 1461; 4 R. C. L. Supp. p. 762. (4) 27 C J. p. 534 §227. (5) 7 C. J. p. 182 §284; 3 R. C. L. p. 300; 1 R. C. L. Supp. 806. (6) 27 C. J. p. 414 §5; 12 R. C. L. p. 593.