## OPERATORS ROYALTY & PRODUCING CO. v. GREENE.

No. 24642.   Sept. 10, 1935.

Disney & Alcorn and John Wheeler, for plaintiff in error.

Roscoe E. Harper and Gentry Lee, for defendant in error.

PER CURIAM. This is an appeal from a verdict and judgment in favor of defendant in error, herein referred to as plaintiff, against plaintiff in error, herein referred to as defendant, in an action for the recovery of damages, alleged to have resulted to plaintiff by reason of certain false and fraudulent representations alleged to have been made by defendant to plaintiff as an inducement in the sale of an oil and gas lease by defendant to plaintiff.

The facts on which plaintiff relies, as disclosed by the pleadings, are as follows:

On the 18th day of April, 1931 the defendant owned, and thereupon sold to plaintiff, a certain oil and gas mining lease, on which there were five producing oil wells, for a consideration of $12,500. For the purpose of bringing about said sale, defendant made certain oral representations to plaintiff as to the amount of casing in the wells on said lease; that, in fact, all of the casing represented as being in said wells was not in the wells, being short as follows: 320 feet of 12½-inch and 920 feet of 10-inch casing in well No. 1, 938 feet of 8-inch casing in well No. 2 and 941 feet of 8-inch casing in well No. 5. Said representations were alleged to be false and fraudulent and made for the purpose of inducing plaintiff to purchase said lease, and that plaintiff, relying upon said representations and believing them to be true, purchased said lease. That the defendant either knew said representations to be false, or that they were made recklessly and were not warranted by the information in possession of said defendant.

The production on said lease being very small, and the purchase being made principally for salvage purposes, the amount of casing in said wells was a considerable factor in determining the price plaintiff would be willing to pay for said lease. That the value of this missing casing was $2,004.40. That the value of said wells as producers was $900 less than it would have been had this missing casing been in the wells as represented by defendant. That the total value of said lease was $2,904.40 less than it would have been had all of the casing been in the wells as represented by defendant.

The defendant answered by general denial, admitting however, the sale and transfer of said lease and the consideration paid. Upon trial the jury returned a verdict in favor of plaintiff for the sum of $2,500. Defendant filed motion for new trial, which was overruled. Defendant appeals.

Defendant's numerous assignments of error are presented under two propositions, namely:

First. That the trial court erred in overruling defendant's motion to require plaintiff to separately state and number his causes of action.

Second. The trial court erred in overruling the motion of the defendant for a new trial, in overruling defendant's demurrer to the evidence of the plaintiff, and in overruling defendant's motion for an instructed verdict, for the reason that the evidence wholly failed to show any act of false or fraudulent representation on the part of the defendant, and the evidence wholly failed to sustain the allegations in plaintiff's petition. The court erred in refusing to give the instructions asked by the defendant.

With reference to the first proposition, it is sufficient to say that in this case there is only one cause of action; that is, an action for damage resulting from false and fraudulent misrepresentations and statements.

At the beginning of the trial the plaintiff contended that the measure of this damage was the excess, if any, of the value of the lease, had it been as represented, over its actual value. To this contention the defendant agreed. The trial court thereupon confined the proof to this issue throughout the various stages of the trial, allowing plaintiff to submit his evidence showing the several items of damage. These several items did not constitute separate causes of action. We find no merit in this assignment of error.

"* * * A distinction is to be observed between causes of action and elements of damages, and a complaint is not to be regarded as stating different causes of action merely because it states distinct items or elements of damages which result from the same wrongful act." 1 C. J. 1058; Doak v. Mammoth Copper Mining Co. of Maine, 192 Fed. 748; Moropoulos v. C. H. & O. B. Fuller Co. et al. (Cal.) 200 P. 601; Tuttle v. Everhot Heater Co., 264 Mich. 60, 249 N. W. 467; Hurwitz v. Gross (Cal.) 91 P. 109.

The questions of law raised in the second proposition may be grouped in two classes. The first class challenges the sufficiency of the evidence. The second challenges the correctness of certain instructions given and the

refusal to give certain offered instructions. We will first consider the sufficiency of the evidence.

The trial developed certain uncontroverted facts viz.: That one Stephen B. Nelson was secretary and treasurer of the defendant corporation at the time of the sale and conducted the negotiations for defendant, culminating in the sale of said lease. One Walter Crosby, agent for plaintiff, conducted the negotiations for the plaintiff.

In the drilling of the wells certain records known as "logs" were kept of the several wells at the time they were drilled. That these "logs," if properly kept, should reflect the condition of the wells from the time drilling started until the wells ceased to be commercial wells; should show the amount of casing placed in the well, the amount pulled, and the amount finally left in the well. That said Nelson was connected with the Operators Oil Company at the time it became the owner of the lease in question, soon after well No. 1 was drilled by a former owner. During the time the Operators Oil Company owned said lease it drilled wells Nos. 2 and 3, and then sold the lease to the Sun-Ray Oil Corporation, which said last-named corporation kept said lease for approximately 14 months, during which time it drilled wells Nos. 4 and 5. Thereafter, the Sun-Ray Oil Company sold the lease to the defendant, Operators Royalty & Producing Company, a corporation, with which company said Nelson was connected as secretary and treasurer.

That one Henry Burch was an employee of the defendant corporation, in the capacity of superintendent in charge of lease, at the time of said sale of plaintiff. That he had been superintendent in charge of said lease, as employee of the successive owners, for a period of time immediately following the completion of well No. 1 to the time of the sale to plaintiff. Burch, a witness for defendant, testified that he knew that the 938 feet of 8-inch casing shown by the log to have been in well No. 2 at the time of sale had been pulled and was not in the well at the time of the sale. That he knew the 941 feet of 8-inch casing shown by the log to have been in well No. 5 had been pulled and was not in the well at the time of the sale.

There was competent testimony showing that the 360 feet of 12½-inch casing and 920 feet of 10-inch casing shown by the log to have been in well No. 1 was not in the wells at the time of the sale.

There was further competent testimony produced by plaintiff showing that said Nelson, in response to a request from plaintiff, the

intended purchaser, for an inventory of all the equipment, in the ground and on top, that went with the lease, stated "that they had the logs on file and would get those, from which he could get this casing record of casing left in the wells." He thereupon produced said "logs" and read therefrom the lists of casing shown by said "logs" to have been left in the wells. By the "logs" it was made to appear that the controverted casing was in the wells.

Did this statement by Nelson, coupled with his act of producing the "logs" of the wells and reading therefrom the lists of casing shown by said logs to have been left in the wells, constitute a representation of material facts by the seller to the intended purchaser, for the purpose of inducing the sale of said lease? The answer to this question is decisive as to the sufficiency of the evidence.

It is conceded by both plaintiff and defendant that it is the custom among oil producers to rely on the "logs" reflecting the condition of the wells and the amount of casing therein.

This custom prevailing, the defendant contends that its duty to plaintiff was fully performed by producing the "logs," and therefrom furnishing plaintiff the figures showing the amount of casing in the well. This might be true were it not for the fact that the defendant had knowledge that the casing in controversy had been removed from the wells, which removal was not shown by the "logs."

A corporation can acquire knowledge only through its officers and agents, the general rule being that a corporation is affected with constructive knowledge, regardless of its actual knowledge, of all material facts of which its officer or agent receives notice or acquires knowledge while acting in the course of his employment and within the scope of his authority, and the corporation is charged with such knowledge even though the officer or agent does not in fact communicate his knowledge to the corporation. 14A-C. J. 482; Strohecker v. Mutual Building & Loan Ass'n of Las Vegas (N. M.) 34 P. (2d) 1076; Federal Trust Co. v. Coyle, 34 Okla. 635, 126 P. 800.

Applying the above rule, there was sufficient evidence from which the jury could find that actual fraud was practiced by defendant in sale of said lease.

"In determining the existence of fraud, any evidence direct or circumstantial, which is competent by other rules of law, and has a tendency to prove or disprove such issue, is admissible. The whole transaction involving the alleged fraud may be given in evidence. * * *

"The gist of a fraudulent misrepresentation is the producing of a false impression upon the mind of the other party, and if this result is actually accomplished, the means of accomplishing it are immaterial." Wilson v. Rentie, 124 Okla. 37, 254 P. 64; International News Service v. News Publishing Co., 118 Okla. 113, 247 P. 87; Lewis v. Manning, 123 Okla. 297, 253 P. 281; Waite-Phillips Co. v. Sidewell, 120 Okla. 81, 250 P. 415.

"Fraud is a generic term, which embraces all the multifarious means which human ingenuity can devise, and are resorted to by one individual to get an advantage over another by false suggestions or by the suppression of the truth. No definite and invariable rule can be laid down as a general proposition defining fraud, as it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated." Hawkins v. Bryan, 128 Okla. 27, 261 P. 167.

The evidence being sufficient to carry to the jury the issue of fact as to the existence or nonexistence of fraud, the verdict of the jury upon such issue of fact will not be disturbed by this court, if the issue was submitted to the jury under proper instructions.

"When fraud is properly alleged upon the one hand and denied upon the other, the existence or nonexistence of such fraud becomes a question of fact for the jury to determine, under proper instructions, and upon appeal, the verdict of the jury upon such facts will not be disturbed by this court, if there is any evidence reasonably tending to support such verdict." Illinois Oil Co. v. Pender, 137 Okla. 82, 277 P. 1026; Hall v. Smith, 126 Okla. 206, 259 P. 537.

We have carefully examined the instructions given by the trial court and also the the instructions offered by defendant and refused by the court, and find no reversible error therein.

The judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys Ernest F. Smith, Theodore R. Moore, and W. E. Crowe in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Smith and approved by Mr. Moore and Mr. Crowe, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, PHELPS, and CORN, JJ., concur.