**KELLY et al. v. CITIZENS FARMERS NAT. BANK.**

No. 25748.  Oct. 29, 1935.

Morris & Wilhite, for plaintiffs in error.

D. M. Cavaness, for defendant in error.

PER CURIAM. This case was instituted by the defendant in error, as plaintiff, against plaintiffs in error, as defendants, in the district court of Grady county, Okla., to recover a joint and several judgment against said defendants on a promissory note. The parties will be referred to hereinafter as they appeared in the trial court.

At the time of the institution of this suit and prior thereto, the plaintiff was a banking corporation with its location and place of business at Chickasha in said Grady county. Defendants were each and all nonresidents of Grady county, all being residents of Caddo county, which fact was known to the plaintiff and its attorney hereafter referred to, long before the institution of this suit.

Plaintiff held a promissory note signed by all the defendants. When said note was not paid at maturity, plaintiff placed the note in the hands of its attorney for collection. Such attorney thereupon wrote a letter addressed to all the defendants at their Caddo county addresses. In this letter plaintiff's attorney explained to the defendants that the plaintiff had placed the note in his hands for suit, advising the defendants of the amount claimed to be due and then said:

'The note, of course, provides for an attorney's fee if the note be placed in suit. The bank informs me that you, or some of you promised to take care of this note, or make some arrangements on last Monday, and this you failed to do. Before commencing suit upon the note I though(t) I would write you and give you an opportunity to take care of it. Unless you give the matter your immediate attention, I will be forced to file suit."

Several days later the attorney received a letter from J. R. Thomas, one of the defendants, which read:

"Replying to yours April 1, will say Mr. Kelly and I will be over in a short time. Was away when your letter came. Just returned last night. Thanking you to delay this until we can get over."

And still later the attorney received another letter from Thomas which read:

"I drove over to see you Tuesday afternoon of this week but your office was locked and failed to see you. I wanted to talk over the matter of that note with you. Do not see how I can get over there before sometime first of next week but will come over as soon as I can possibly do so. Thanking you for patience."

On May 10, 1933, plaintiff's attorney wrote Thomas:

"I received your letter with reference to the note owing the bank by yourself, Mr. Breckenridge and Mr. Kelly; however, you never did come to see me about it. Mr. Kelly was in the office about a month ago and I had some talk with him about the matter.

"We, of course, wish to avoid the necessity of filing suit upon the note and I think you and Mr. Kelly should make some ar-

rangement with the bank with reference to renewing or extending the debt. I wish you would confer with Mr. Kelly and see me about the matter the first time you are in Chickasha, as the matter cannot stand as it is very long."

On May 12, 1933, and in response to the letter from plaintiff's attorney and because of it, the defendant Thomas went to the office of plaintiff's attorney in Chickasha. There he met said attorney, and after he had been there about 15 minutes he was served with the summons in this suit by a deputy sheriff of Grady county. Such summons was returned to the court clerk in due time showing service upon the defendant Thomas, and that the defendants Breckenridge and Kelly were "not found" in Grady county. Thereafter alias summons was issued directed to the sheriff of Caddo county for the defendants Breckenridge and Kelly, and there duly served upon such defendants and returned to the court clerk of Grady county.

Each of the defendants filed a motion to quash the summons and the service thereof upon the ground that the suit was not properly brought in Grady county, Okla., their claims being that the service of summons upon the defendant Thomas had been procured through fraud, artifice, trick or device, and constituted an abuse of process. Of course, if the service of summons upon the defendant Thomas was invalid, the service of summons upon the other defendants in Caddo county would be unauthorized.

When the motion to quash the service as aforesaid came on for hearing before the trial court, evidence was introduced in opposition to the service and to support same. The letters above referred to and quoted in part were introduced in evidence, as were the pleadings, the praecipes for summons and the summonses themselves.

The petition was captioned showing the venue to be in the district court of Grady county. The petition contained the statement that "the defendants are residents of the state of Oklahoma, and that some of them can be served with summons in said county and state." As shown by the filing mark of the court clerk, this petition was filed in the office of the court clerk of Grady county on May 12, 1933. With the petition, there was filed a praecipe for summons signed by the attorney for the plaintiff, directing the issuance of summons for the defendants to the sheriff of Grady county, and directing the court clerk to make the summons returnable on the very day of its is-

suance, to wit, May 12, 1933. The summons called for in the praecipe was issued by the court clerk and placed in the hands of a deputy sheriff of Grady county on May 12, 1933, but disregarding the direction contained in the praecipe to make the summons returnable on May 12, 1933, the court clerk made same returnable on May 22, 1933.

It is shown by the uncontradicted evidence that the petition captioned as aforesaid had been prepared before the arrival of the defendant Thomas, and was reposing upon the desk of the stenographer of plaintiff's attorney at the time Thomas came to the defendant's office. When the defendant Thomas arrived in Chickasha, he went to the plaintiff bank, and near the door of such bank encountered plaintiff's attorney and the two of them went directly upstairs to the attorney's office. As soon as they arrived at the attorney's office, and apparently as soon as Thomas was seated in the attorney's private office, such attorney went out into the outer office and told his stenographer to take the papers over and file them and have the sheriff serve them while Thomas was in town.

This must have been before any discussion was had relative to adjustment of the matter, because within 10 or 15 minutes after the arrival of Thomas at the office, he was served with the summons. Many things were done in that short time. The girl left to perform her mission while plaintiff's attorney went back to talk to Mr. Thomas. About ten minutes after the arrival of Thomas at the office, the deputy sheriff called plaintiff's attorney by telephone and wanted to know where he could find Mr. Thomas. The attorney told him. "He is here now." Within five minutes thereafter Thomas was served with summons in the office of plaintiff's attorney.

During this short 15 minutes, the stenographer received her directions, went to the courthouse, filed the suit, procured the issuance of summons and delivery of same to the deputy sheriff, the latter called Mr. Cavaness by phone and then came to the attorney's office, where he served the summons.

Plaintiff's attorney testified in response to the following questions:

"Q. Your purpose in filing suit was to catch him in this county? A. Yes. They borrowed the money here, and we lived here. Q. You knew he lived in Caddo county and the other makers of the note lived in Caddo county? A. Sure, yes, sir."

Thomas came to Chickasha for the sole

purpose of conferring with plaintiff's attorney about the note. He did not know that plaintiff contemplated filing suit against the defendants in Grady county, and testified that if he had known such, he would not have come to Chickasha. Thomas testified that he did not think plaintiff's attorney would suggest that Thomas come over to Chickasha to see him for the purpose of serving summons upon him. The evidence clearly shows that Thomas was acting under the impression that he had been invited to Chickasha for the purpose of making an adjustment.

After hearing the evidence, the trial court overruled each of the motions to quash summons and service, and this action is complained of by plaintiffs in error as constituting reversible error.

On the 29th day of January, 1934, the case came on for trial, and at the conclusion of the opening statement of counsel for the defendant Kelly, and upon motion of the plaintiff, the trial court discharged the jury and rendered judgment for the plaintiff against all of the defendants. Their motion for new trial being overruled, the defendants lodged their appeal by petition in error with case-made attached.

No question is raised as to the jurisdiction of this court to entertain such appeal or to review the record presented:

Plaintiffs in error make two contentions:

(1) The trial court committed reversible error in overruling the motions to quash summons and service thereof; (2) the court erred in discharging the jury and rendering judgment upon the opening statement of counsel and the pleadings.

In view of our conclusion, upon the first contention, that there was no action properly pending in Grady county, Okla., we think it unnecessary and even improper to discuss or rule upon the second contention, since, if it did so, this court would be in the position of deciding upon the merits of the case prior to the pendency of a suit involving same.

Therefore, the two legal questions involved are:

(1) Whether the summonses and service thereof should have been quashed, if it appears from the record that the defendant Thomas was induced by means of fraud, deceit, artifice, or trick to come into Grady county for the purpose of securing service of process upon him in that county, in order that the venue might properly be laid in that county for suit against all of the defendants.

(2) Whether it must be said from this record, that the defendant Thomas was induced to enter Grady county by any of the means aforesaid, for the purpose of securing service of process upon him.

We think both of these questions must be answered in the affirmative.

1. Section 167, O. S. 1931, reads:

"Where the action is rightly brought in any county, a summons shall be issued to any other county against any one or more of the defendants, at the plaintiff's request."

Section 117, O. S. 1931, provides in part:

"Every other action must be brought in the county in which the defendant or some one of the defendants resides or may be summoned."

It is, therefore, obvious that unless the summons and service had upon the defendant Thomas was valid, summons could not properly have been issued to Caddo county for service upon the other defendants there. See Grady v. Rice, 98 Okla. 166, 224 P. 321; Oklahoma State Bank of Ada v. Reed, 121 Okla. 103, 247 P. 402.

The general rule with reference to fraudulent procurement of process is stated in 50 C. J., page 488. section 92, as follows:

"Personal service obtained by inveigling or enticing the person to be served into the territorial jurisdiction of the court, by means of fraud and deceit, actual or legal, or by trick or device, * * * is void and will be set aside. So service will be set aside where defendant is procured to come into jurisdiction by pretense of settlement, and process is served on him, whether the matter of a settlement was first broached by plaintiff or defendant."

To the same effect, see 21 R. C. L. 1275, section 17. and note.

In the case of Fitzgerald and Mallory Construction Co. v. Fitzgerald, 137 U. S. 99, 34 L. Ed. 608, at 611, Mr. Chief Justice Fuller says:

"If a person is induced by false representations to come within the jurisdiction of a court for the purpose of obtaining service of process upon him, and process is there served, it is such an abuse that the court will, on motion, set the process aside. * * *"

We have been cited to no case decided by this court which is directly in point upon this proposition, and an independent search has failed to disclose such. But the Supreme Court of Kansas had occasion to pass upon

this question at an early date. In November, 1887, the rule was announced by the Supreme Court of Kansas in Van Horn v. Great Western Manufacturing Co., 37 Kan. 523, 15 P. 562. The syllabus to that case sums up the opinion of the court by Valentine, J., in the following language:

"Where a person, by fraud and deceit, inveigles another into the jurisdiction of the court, for the purpose of suing him, and of obtaining service of summons upon him in that jurisdiction, the summons and the service thereof should be set aside. Such an abuse of judicial process cannot be tolerated in any court of justice."

The case last cited is closely analogous to the case at bar. In that case, the plaintiff had previously bought some equipment from the defendants, which equipment they were to use in operating their mills. Plaintiff wrote defendants inviting a member of the firm to come to the plaintiff's county in connection with the acquisition of other equipment and asking the defendants to fix "us up right." A member of the defendants' firm went into plaintiff's county and discussed the matter with plaintiff on two different days, but finally learning plaintiff was asserting a claim against defendants for damages arising out of the equipment previously sold by plaintiff to defendants, defendants' agent refused to have any further discussion with plaintiff, whereupon plaintiff filed suit against defendants and caused defendants' agent to be served with summons.

In holding that this was an abuse of judicial process, the court said:

"No comment is really necessary. The plaintiffs, by fraud and deceit, inveigled one of the defendants, John Wilson, into the jurisdiction of the district court of Pawnee county, for the purpose of obtaining service of summons upon him in an action intended to be brought against him and his partner in that county. Such an abuse of judicial process cannot be tolerated in any court of justice."

Many cases are cited in the opinion to support this rule and several later Kansas cases follow it. See Wells v. Patton, 33 P. 15; Abercrombie v. Abercrombie, 67 P. 539; Feight v. Wyandt, 99 P. 611.

It is interesting to note that in the case last cited, the Supreme Court overruled the trial court, the latter having obviously made a finding that there was no fraud. These cases are squarely in point.

See, also, Frawley, Bundy & Wilcox v. Pennsylvania Casualty Co. (C. C.) 124 Fed.

259; Cavanagh v. Manhattan Transit Co. (C. C.) 133 Fed. 818.

In the case last cited, the court quotes from the opinion of the Supreme Court of New Jersey in the case of Reed v. Williams, 29 N. J. Law, 385, as follows:

"The plaintiff was himself examined at some length in the matter, but he does not in any way deny or contradict the charge brought against him. I shall consider, therefore, that the fact is abundantly proved that the plaintiff, under a mere show or false pretense, decoyed and inveigled the defendant, when he would not otherwise have come from the state of New York, into our jurisdiction, for the sole purpose of having this process served upon him, the arrangements for doing which had been previously made; and the question is whether the court should sustain this proceeding—whether this is a proper or an improper use of the court's process. I cannot suppose the courts were established for any such purpose. To aid in fraud, deceit, or wrong in any form is no part of their business. To prevent and suppress all such things is their highest duty. To permit a party to take advantage of his own wrong is what the law abhors."

The opinion in the Cavanagh Case is also helpful upon the questions of the burden of proof and of the quantum of proof necessary for the defendants to introduce. The court cites and quotes at length from the case of Steiger v. Bonn (C. C.) 4 Fed. 17. In the Steiger Case, the defendant was a citizen of the state of New York and was induced by a forged telegram to come to Newark, where he was served with summons. There was no express proof that any one representing the plaintiff, or that the plaintiff himself, had sent the telegram or caused same to be sent, but in this connection the court said:

"The question involved must be decided by ascertaining upon which party the burden of proof lies. There is no pretense that the deputy marshal had any knowledge of the forged telegram. Do the undisputed facts make such a presumption against the plaintiff or his agent, who accompanied the officer, that he is called upon to rebut them with proof that he was not privy to the deception practiced upon the defendant? I am of that opinion. The presumption of the plaintiff's participation in the deception is stronger here than in the case of Heavener v. Heist, 30 Leg. Int. 46. and yet in that case the court set aside the writ. The defendant had been brought to Philadelphia from Bucks county, Pa., by a forged telegram, and on his arrival he was served with the writ by the deputy sheriff. Judge Sharswood thought the burden of proof was upon the plaintiff to explain how the officer knew

that the defendant was coming. There was no evidence as to who sent the telegram, and yet the learned judge held that the failure of the plaintiff to show that he did not direct the officer in the service was fatal to the legality of the proceedings. 'I am clearly of the opinion,' he says, 'that it was incumbent on the plaintiff to produce the sheriff's deputy who made the arrest, in order to show that it was not by the instruction of the plaintiff or his attorney that he went with the writ at that time to that place to arrest the defendant'."

After quoting as above from the Steiger Case, Judge Lanning continues as follows:

"In the case at bar the summons was issued on October 5th, the same day that Mr. McDonald visited Newark. The sheriff. or his deputy, was waiting outside of the Palace Hotel to serve the summons upon Mr. McDonald the moment he should leave the hotel. Why was the summons dated on the very day when Mr. McDonald had notified Mr. Cavanagh that he (McDonald) would be in Newark? How did it happen that the sheriff, or his deputy, was at the Palace Hotel in Newark on the very day and hour of Mr. McDonald's visit there? The plaintiff should have furnished answers to these questions."

In the case at bar, there was no attempt upon the part of the plaintiff to justify its conduct and no evidence was introduced by the plaintiff tending in any wise to show that there had been a bona fide attempt to adjust the matter with Mr. Thomas and that such an attempt had failed. The evidence is all to the contrary.

2. In its brief the defendant in error says the above authorities are not applicable to this case, because the trial court found that the plaintiff had been guilty of no fraud or deceit, and had used no trick or device or artifice to inveigle or lure the defendant Thomas into the county. We must assume that the trial court made such finding, as same is absolutely necessary to support the order.

Such finding of the trial court is clearly against the evidence. and there is no evidence of record to support same.

Every fact and every circumstance shown by this record indicates that the purpose and motive behind the letter of May 10, 1933, was to get Thomas into the county in order that process might be served upon him. Such letter contained a direct invitation to the defendant Thomas to come to Chickasha to confer with plaintiff's attorney in connection with the note involved. The apparent tenor of the previous negotiations was looking to some kind of an arrangement for taking care of the situation, in order that it would not be necessary to file the suit. Then when the invitation was accepted and Thomas appeared, the very first move of plaintiff was to set in motion the machinery to "spring the trap," as outlined above in the statement of the facts.

These significant facts, which are uncontradicted in the record, serve to distinguish this case from those cases which hold that it is not fraudulent procurement of process to serve the summons after there has been a bona fide attempt at settlement or adjustment and same has failed, or been rendered hopeless, and where the intent to sue and serve with summons has been formed after the failure of a bona fide attempt at adjustment. Of this class of cases is Commercial Mutual Accident Co. v. Davis, 53 L. Ed. 782, 213 U. S. 245.

Here, there could have been no bona fide attempt, since no time was allowed therefor, and plaintiff offered no evidence of same. Defendants by their evidence of those facts had made a prima facie case of fraud as defined by our statute and this court, thereby shifting the burden of going forward with the facts to the plaintiff. The latter made no attempt to meet that burden, which it was required to do, as pointed out in the Steiger and Cavanagh Cases, supra. Instead, plaintiff was forced to the admission of a previously formed intent: "A. Yes, they borrowed the money here and we lived here."

It strikes us that this record clearly shows that the plaintiff, through its attorney, had placed itself in the position of exhibiting a flag of truce. The defendant Thomas came into Grady county on this particular day, feeling and believing that he was protected by the wholesome principle that an adversary may safely rely upon a flag of truce, and will be given safe conduct back to his own lines.

Viewed in this light, we think it is clear that the truce called for by plaintiff was violated. All of the facts hereinbefore enumerated point to it. While it is categorically denied by plaintiff in its response to the motions to quash, the effect of such denial is destroyed by unexplained admissions made under oath from the witness stand.

The plaintiff contends that the suggestion was first made by Thomas that he come to Chickasha. As we view the situation, this is immaterial, as we construe the letter of

May 10th to be a new invitation. extended, obviously, to further plaintiff's plan, and certainly "fitted to deceive" Thomas, and to create a false impression in his mind. By the uncontradicted evidence, it did so. We do not think same should be approved.

The law favors the amicable adjustment of disputes for the avoidance of litigation. If one, invited to come into a county not his own for the expressed purpose of attempting to reach an amicable adjustment, could properly be served with process when he accepted such invitation, same having been extended for the purpose of securing service upon him, thus requiring him to defend the action in a venue not of his choosing, and in which he could not otherwise be required to defend, freedom of intercourse would be materially restricted, if not destroyed.

The necessity of safeguarding this policy is indicated by the Circuit Court of Appeals for the Fourth Circuit in the case of Bluefield Waterworks & Imp. Co. v. Sanders, 63 Fed. 333, at 337, where it is said:

"If a nonresident be unwittingly in a jurisdiction in which he is nonresident, and be served with process while ignorantly and unintentionally there, the courts will severely scrutinize the process itself and the circumstances under which it was issued and served in contravention of his natural right to be sued at home."

Plaintiff strenuously contends that it was not guilty of fraud, and that unless it is found guilty of fraud, the summons and the service thereof was valid.

Section 9417, O. S. 1931, defines "actual fraud" as "the suggestion, as a fact, of that which is not true, by one who does not believe it to be true," and, "as the suppression of that which is true, by one having knowledge or belief of the fact," and as "any other act fitted to deceive."

It is not necessary that fraud be established by direct proof, it being competent to resort to circumstantial evidence to prove same. Lewis v. Manning, 123 Okla. 297, 253 P. 281. We recognize that fraud should be established by clear and convincing evidence, but, within the meaning of the term as hereinabove noted, we think it was so established in this case. In this connection we point' out that the suggestion, to the effect that plaintiff would like to discuss the matter of a possible amicable adjustment with the defendants, was clearly contained in every communication from plaintiff to defendants,

and that Thomas was not advised or warned that if he came to Chickasha, pursuant to the letter of May 10th, he might be served with summons. Obviously, plaintiff's attorney did not believe that a bona fide conference for the purpose of settlement was desired by his client, and he knew before Mr. Thomas came to Chickasha what was going to be done. This is clearly evidenced by the fact that he was all ready for Mr. Thomas when Thomas arrived, and the first business attended to was to send the stenographer to file the suit. Figuratively speaking, he never gave Thomas a chance to open his mouth until the first move was made looking toward the service of summons upon Thomas in Grady county.

The very least which can be said is that a false impression had been created upon the mind of the defendant Thomas. That this constitutes fraud under the circumstances, see the following authorities: Wilson v. Rentie, 124 Okla. 37, 254 P. 64; International News Service v. News Publishing Co., 118 Okla. 113, 247 P. 87.

In the case last cited, this court said:

"The gist of a fraudulent misrepresentation is the producing of a false impression upon the mind of the other party, and, if this result is actually accomplished, the means of accomplishing it are immaterial. Hankins v. Farmers' & Merchants' Bank, 42 Okla. 330, 141 P. 272."

In the case of Frawley, Bundy & Wilcox v. Pennsylvania Casualty Co., supra, the court says:

"It is the artifice that lay hid in it that was the offense. A fraud or trick is always put forward with a fair face. It would not succeed without it."

The court further says in quoting from the case of Wood v. Wood, 78 Ky. 624, as follows:

"It is not the truth or falsity of the representation that constitutes the fraud. It is the concealed motive lying in the breast of appellant, and which prompted him to make the representation."

Defendant in error relies chiefly upon two Kansas decisions to support its position. The first is Van Arsdale-Osborne Brokerage Co. v. Jones. 156 P. 719. In that case no transcript of the evidence in support of the motion to quash the summons was presented to the appellate court, such court saying in the opinion that in the absence of such evidence no review of the ruling on the motion could be had, unless the admitted facts showed

that fraud was practiced in obtaining the service. It was agreed, however, that the defendant had called voluntarily at plaintiff's office to discuss the settlement, 'and the Supreme Court of Kansas held there being no admission that the defendant was induced to come to plaintiff's office for the purpose of discussing a settlement, and since there was no transcript of the record upon such point before the appellate court, it could not be found that there was any fraud. We think that case clearly distinguishable from the case at bar.

Defendant in error also relies upon the case of Iams v. Tedlock (Kan.) 204 P. 537. To our mind that case is also clearly distinguishable, in that the defendant was not induced to come into the jurisdiction by an invitation to discuss an arrangement for adjustment or settlement, but came into the the jurisdiction pursuant to a legal notice of a meeting of a board of trustees, of which the defendant was a member. In holding that the service was not procured by fraud, the Supreme Court of Kansas says:

"It was the duty of the secretary to notify Wilson of the meeting of the trustees; it would have been an act of bad faith on the part of the secretary not to notify Wilson. As a trustee of the gas company, it was Wilson's duty to attend that meeting."

No such fact or circumstance can be found in the record in the case at bar.

In accordance with the views herein expressed, the ruling and judgment of the trial court in the case at bar is reversed, and this cause is remanded to the district court of Grady county, Okla., with directions to sustain the motions of the defendants to quash the summons.

The Supreme Court acknowledges the aid of Attorneys John H. Cantrell, Mart Brown, and Stephen Chandler in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. John H. Cantrell and approved by Mr. Mart Brown, being dissented to by Mr. Stephen Chandler, whose dissenting opinion thereto is hereby rejected, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and RILEY, BUSBY, CORN, and GIBSON, JJ., concur.