**Walter R. GRAHAM, Plaintiff,**

v.

**Max T. MORGAN, Defendant.**

**Civ. No. 3553.**

United States District Court,
N. D. Oklahoma.

Jan. 28, 1955.

Floyd Walker, Tulsa, Okl., for plaintiff.

Robert C. Saunders, Tulsa, Okl., for defendant.

WALLACE, District Judge.

The plaintiff, Walter R. Graham, a Kansas citizen, brings this action against the defendant, Max T. Morgan, an Oklahoma citizen, to recover damages for a monetary loss allegedly suffered by the plaintiff because of perjured statements given by the defendant in carrying out a scheme to defraud and deceive the plaintiff while the defendant was president of the Moral Insurance Company, an Oklahoma corporation.

The submitted evidence establishes that the plaintiff was involved in an automobile collision brought on by the negligence of an insured of the Moral Insurance Company (herein referred to as Moral); and, that subsequent to said accident plaintiff obtained a judgment against said insured in the State of Kansas.[1] Inasmuch as Moral was not authorized to do business in Kansas and could not be served there, the plaintiff instituted an action against Moral in the District Court of Tulsa County, Oklahoma, to collect from said insurer up to the limits of the issued policy in partial satisfaction of the prior Kansas judgment.[2] On June 3, 1953, just prior to trial, Moral filed an amended answer wherein by the verified affidavit of the defendant, as president of the Company, Moral denied that a policy of insurance had been issued to the insured in question. The plaintiff, in reliance upon the sworn statement of the defendant that Moral had not issued a policy to the insured in question, dismissed its suit against Moral. On February 20, 1954, Moral was adjudged insolvent and placed in receivership with all claimants being enjoined from filing further suits against Moral. Subsequent to this determination of bankruptcy the plaintiff came into possession of the original policy issued by Moral and in effect at the time of the instant accident.

The defendant urges that this action in essence is one to recover for perjury and that perjury as such does not give rise to civil liability[3] but is solely punishable by a criminal action against the perjurer.[4] However, the evi-

---

1. Plaintiff gained a judgment against one G. W. Cochran in the District Court of Sedgwick County, Kansas, for $37,000 personal injuries and $1,400.99 for property damage arising out of an automobile accident between plaintiff's car and the car of Cochran, on November 9, 1951, in Wichita, Kansas. At the time of said collision Cochran was insured for public liability and property damage in the amounts of $5,000, $10,000, and $5,000 under a policy issued by Moral on June 19, 1951.

2. Case No. 84914, District Court of Tulsa County.

3. As stated by the annotator in 12 A.L.R. 1264; "Aside from the defamation and malicious prosecution, the courts refuse to recognize any injury from false testimony, on which a civil action for damages can be maintained. The following cases support the rule that no action for damages lies for false testimony in a civil suit, whereby the plaintiff fails to recover a judgment, or a judgment is rendered against him." (Citing authorities from Connecticut, Indiana, Louisiana, Maine, Maryland, Massachusetts, New Hampshire, New York, North Carolina, Ohio, Pennsylvania and Vermont) See supplementary annotation at 81 A.L.R. 1126.

4. Two reasons for this rule are noted in 70 C.J.S., Perjury, § 92, footnote 72 as follows: "(1) 'For reasons of public

dence in its entirety demonstrates that the plaintiff has proved a cause against the defendant in fraud and deceit and the perjury in question is not the crux of plaintiff's claim but merely one segment of a scheme initiated by the defendant to conceal the existence of the issued policy and unlawfully prevent plaintiff from benefiting thereunder.[5]

■■ The evidence is clear and convincing that not only did the defendant *intentionally* make the affidavit attached to Moral's amended answer in the Tulsa District Court case, *knowing* the affidavit to be untrue, but that the defendant in the same proceeding also falsely represented that the policy in question had not been issued by Moral when served with a subpoena duces tecum to produce Moral's records pertaining to such policy.[6] These misrepresentations were part and parcel of a preconceived plan, authored by the defendant, to prevent the plaintiff from collecting what rightfully belonged to plaintiff under the terms of the Moral policy.[7] The evidence is conclusive that the defendant embarked on a scheme to deceive and cheat the plaintiff; and, that as a direct result of such chicanery the plaintiff has been denied partial satisfaction of a judicially declared debt.[8]

policy such a cause of action has generally been denied in order to protect the proper functioning of the courts by enabling witnesses to make full and complete disclosures in their testimony without the restraint or fear of subsequent suits for damages.'—Robinson v. Missouri Pac. Transp. Co., D.C.Ark., 85 F.Supp. 235, 238. (2) Public policy requires the establishment of the rule precluding a defeated party to an action from maintaining an action against one whose perjured testimony brought about an adverse verdict while the judgment remains in force.—Kessler v. Townsley, 132 Fla. 744, 182 So. 232."

5. See 41 Am.Jur. § 81, p. 45 where the textwriter in recognizing the general rule that perjury does not give rise to civil liability goes on to state: "On the other hand, it is apparently well settled that where the giving of false testimony is only a part of the carrying out of a scheme to defraud the plaintiff by means of the combination, fraud, and deceit of the defendants, an action will lie for damages."

6. The flagrant character of these misrepresentations is emphasized in that in November and December of 1951, with defendant's knowledge, an employee of Moral made three trips to Wichita to investigate the collision in question because of the issued policy. When through such inquiries it was learned that said policy would have to stand good for the collision, the defendant and Mr. Gibbons, the head of the liability claim department of Moral agreed to immediately bring the insured, Mr. Cochran, to Tulsa, and later move Cochran's family from Wichita, in order to avoid service of process. Moral paid Cochran's expenses at the Wells Hotel in Tulsa for some week or ten days, arranged to get his car from Wichita, and then paid Cochran's expenses in moving his family to New Mexico. In addition, attorneys hired at the defendant's direction made an appearance in the Kansas Court and attempted to set aside the rendered judgment prior to the time the Tulsa suit was filed.

7. At the time plaintiff filed the lawsuit in Tulsa, the defendant and Mr. Gibbons agreed to deny the existence of the policy. In furtherance of such plan, certain permanent records establishing the existence of this specific policy were removed from Moral's files; these records have not yet been recovered.

8. 76 Okl.Stat.1951, provides in part: "§ 2. Damages for deceit.—One who wilfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers. * * *" and "§ 3. Deceits defined and classed.—A deceit, within the meaning of the last section, is either: 1. The suggestion, as a fact, of that which is not true by one who does not believe it to be true. * * * 3. The suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; * * *." As recognized in Kelly v. Citizens Farmers National Bank of Chickasha, 1935, 174 Okl. 380, 50 P.2d 734, 735, Syl. No. 2: "Suggestion, as a fact, of that which is not true, by one who does not believe it to be true, constitutes fraud, and the gist of a fraudulent misrepresentation is the producing of a false impression upon the mind of other party, and, if this result is actually accomplished, the means of accomplishing it are immaterial." Compare Verplanck v. Van Buren, 1879, 76 N.Y. 247, where

202

 Moral, and the defendant as president thereof, had every right to urge all legal defenses afforded by the issued insurance contract in resisting payment thereunder; however, such right did not include the license to conceal the very existence of the policy itself through active deceit and misrepresentation. At the moment the plaintiff was injured due to the negligence of Moral's insured, the plaintiff gained a beneficial interest in said policy; and, although this Court has no thought of defining the circumstances under which an insurer has the legal duty to reveal the existence of an issued policy, where a person in a position of authority and knowledge such as the defendant does speak at all he has the absolute duty, whether under oath or not, to speak truly; and, where in furtherance of a fraudulent scheme he speaks in a deceitful manner and another to his detriment is mislead, the deceiver is personally liable.[9]

 The plaintiff is entitled to judgment against the defendant for that amount which the plaintiff would have recovered had the defendant not been guilty of such deceit. Under the policy terms at the time the Tulsa action was dismissed and the plaintiff refrained from further action against Moral, Moral under the policy was obligated to pay $1,400.99 property damage suffered by plaintiff, $5,000 of the personal injury sustained by plaintiff, and interest on the entire amount of the judgment entered up to the time of plaintiff's dismissal because of defendant's fraud. In addition, plaintiff is entitled to $2,500 by way of punitive damages.[10]

Counsel should submit a journal entry which conforms with this opinion within fifteen days.

---

the Court ruled that where the giving of false testimony is only a part of the carrying out of a scheme to defraud the plaintiff by means of the combination, fraud, and deceit of the defendants, an action will lie. However, see also Young v. Leach, 1898, 27 App.Div. 293, 50 N.Y.S. 670.

9. Cf. Garrett v. Myers, 1942, 190 Okl. 273, 123 P.2d 965, 966, 967, wherein the Court remarked: "The gravamen of plaintiff's action was recovery for the detriment which they had sustained as the result of having been induced by the fraud of defendant to enter into the contract which they did with the corporation represented by him and not to recover damages for the breach of the contract which they had entered into.

The plaintiffs were injured as a result of the tort and the defendant, if guilty, was answerable therefor irrespective of whether the corporation for which he was acting was a tort feasor or not or whether the defendant was acting in its behalf as agent. (Citing authority.)"

10. 23 Okl.Stat.1951 § 9 provides: "In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant." This authority is vested in the Court where a jury trial is waived. Pure Oil Co. v. Quarles, 1938, 183 Okl. 418, 82 P.2d 970.